(66 South. 181)

No. 20614.

STATE v. GARNER.

(June 30, 1914.)

*(Syllabus by the Court.)*

1. JURY (§ 131*) — EXAMINATION — CROSS-EXAMINATION.

Where a proposed juror is asked, on his voir dire, by the state's attorney, whether, if the state proved its case, beyond a reasonable doubt, he would bring in a verdict of guilty as

charged, the question by defendant's counsel whether he understood the question that had been asked is legitimate cross-examination, and there is no sufficient reason for excluding it.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 561–582; Dec. Dig. § 131.*]

2. WITNESSES (§ 330*)—CROSS-EXAMINATION.

Where the prosecuting witness, in a murder case, testifies that deceased was a lumberman (skidderman) by profession, and was employed by a particular company, the defendant, on trial for the killing, has the right, with a view of discrediting the witness, to ask him, on cross-examination, whether he did not know that deceased was a professional poker player; and the denial of such right is reversible error.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1106–1108; Dec. Dig. § 330.*]

3. WITNESSES (§ 260*)—CROSS-EXAMINATION.

Where a litigant is surprised by the testimony of his witness, he may interrogate him as to previous declarations, in order to refresh his memory; but, if he have reason to believe that his witness will not confirm statements previously made by him, he has no right to call him to the stand, in order, on pretext of refreshing his memory, upon his failure to confirm them, to get such statements before the jury.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 897, 898; Dec. Dig. § 260.*]

4. WITNESSES (§ 380*)—IMPEACHMENT—PREVIOUS STATEMENTS.

Where an adverse witness has been asked whether he did not, at a specified time and place, make a particular statement, to a named person, nothing further is necessary to put him on his guard and lay the foundation for his impeachment; and it is reversible error thereafter to exclude impeaching testimony, on the ground that no foundation has been laid.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1210–1219; Dec. Dig. § 380.*]

5. WITNESSES (§ 262*) — IMPEACHMENT — RECALLING WITNESS.

It is within the discretion of a trial court to permit a witness to be recalled in order to lay the foundation for his impeachment, and a request to that effect is usually granted, unless so to do would result in too great delay.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 797, 899, 904, 1165; Dec. Dig. § 262.*]

6. WITNESSES (§ 355*)—IMPEACHMENT — GENERAL REPUTATION.

If a witness, called to testify as to the general reputation for veracity of another witness, be instructed as to the difference between such general reputation and his private opinion, and he thereupon testifies that he does not know the general reputation of the witness under consideration, because he has heard it discussed by but two or three persons, his testimony should be excluded; but the question of the

exact number and character of discussions that he must have heard, in order to enable him to testify as to the general reputation of such other witness, is one which primarily he is to determine, and the question of the value of the testimony is for the jury. It is not, however, within the province of the judge to instruct a witness that if he has acquired the knowledge, which he says he possesses, of the general reputation of another, living in the same community, of 10,000, from conversations with but two or three persons, he is incompetent to testify to such general reputation.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1154–1156; Dec. Dig. § 355.*]

7. WITNESSES (§ 269*) — CRIMINAL LAW — CROSS-EXAMINATION.

The rule that the state, in cross-examining a witness, called by the defendant in a criminal prosecution, must confine itself to matters testified to in the examination in chief does not preclude cross-examination on other matters, where the purpose is to test the credibility of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

8. CRIMINAL LAW (§ 1092*)—BILL OF EXCEPTIONS—REFUSAL TO SIGN—MANDAMUS TO COMPEL SIGNING.

A bill of exception, which the judge has refused to sign, is no bill, and the remedy is by way of the writ of mandamus to compel the signing.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2803, 2829, 2834–2861, 2919; Dec. Dig. § 1092.*]

9. CRIMINAL LAW (§ 829*)—INSTRUCTIONS.

Where the general charge to the jury covers the law of the case, special charges cannot be required.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Joseph B. Lancaster, Judge.

Albert Garner was convicted of manslaughter, and appeals. Reversed and remanded.

Ponder, Gayer & Ponder, for appellant. R. G. Pleasant, Atty. Gen., and J. Vol Brock, Dist. Atty., of Franklinton (G. A. Gondran, of New Orleans, of counsel), for the State.

MONROE, J. Defendant prosecutes this appeal from a conviction of manslaughter, under an indictment for murder, and a sentence of imprisonment, at hard labor, for ten

years, and he presents his case to this court upon the following bills of exception, to wit:

[1] Bills 1 and 2, which show: That, in examining two of the persons called to serve as jurors, the district attorney asked them:

"If the state proves its case beyond a reasonable doubt, would you bring in a verdict, guilty as charged?"

That, on cross-examination, counsel for defendant asked them whether they understood the question. That the court interposed, of its own motion, and stopped the inquiry, upon the ground that its purpose was to ascertain the views of the proposed jurors upon the subject of capital punishment, and that the matter was of no interest to defendant, since, if the state should be willing to accept jurors who were opposed to capital punishment, he would have no reason to complain.

We are of opinion that, whilst no prejudice to defendant is disclosed by the ruling so made, it was a restriction upon the right of cross-examination which does not appear to have been called for, and that the question should have been allowed.

[2] Bill 3 contains the recital that defendant's counsel, on cross-examination, asked the prosecuting witness Moore:

" 'Don't you know that he was a professional poker player?' That the state objected, and that the objection was sustained, for the following reasons, viz. * * * To which ruling of the court, counsel for defendant excepted and reserved this bill of exception and had attached thereto the notes of evidence and made part hereof. This done and signed this —— day of March, 1914."

Immediately beneath the foregoing is the following:

"Indorsements.
"Filed March 31st, 1914.
                    "M. A. Thigpen. Clerk.
"For reasons, see per curiam, annexed hereto.                Jos. B. Lancaster, Judge."

And then there follows what appears to be the note of evidence, reading:

"The state witness, Moore, having been examined in chief, and tendered, counsel for the defendant asked the witness the following questions: 'Q. How old was he?' Witness answered, 'Twenty-eight years old. Q. What was his profession? A. Supposed to be a skidderman; worked for the Great Southern Lumber Company. Q. Don't you know that he was a professional poker player?' To which question the state objected. The court sustained the objection of the district attorney, reserving the right to file written reasons in full, and now states that the cross-examination of this witness had been prolonged on immaterial lines at great length of time; the cross-examination is absolutely nothing in rebuttal of what was brought out by the state on examination in chief of this witness. The court allowed counsel for defendant a very wide latitude on his cross-examination, and now holds that the cross-examination of this witness, along the lines proceeded on by counsel for defendant, has gone far enough, and sustained the objection. 'To which ruling of the court, and the statement of the court, in the presence of the jury, defendant, through his counsel, excepts and reserves this bill of exception.

"Indorsements.
"Filed March 31st, 1914.
                    "M. A. Thigpen, Clerk."

The "written reasons," given by the judge for his ruling, and signed by him, as of date April 23, 1914, then follow, and are to the following effect:

That the testimony sought to be elicited was immaterial and irrelevant, since it could make no difference, for the purposes of the inquiry into the question of defendant's guilt or innocence of the charge of murder, whether the deceased was a poker player, or whether he was a skidder, in the employ of the Great Southern Lumber Company; that, if the purpose was to show the dangerous character of the deceased, no foundation had been laid for such evidence, and the purpose would not have been subserved by knowing that he was a poker player; and that it was therefore apparent that the purpose was to besmirch the character of the deceased, and thus prejudice the jury; that the bill of exception merely recites that:

The state's "objection was sustained, and that defendant reserved a bill; that no bill of exception had been prepared by defendant's counsel and tendered to me for consideration and signature, to my statement in ruling upon the objection submitted to me, and hence I

take it that defendant has abandoned this exception. However, should it be held otherwise, in defense thereof, I now state that counsel for defendant had cross-examined this state witness, Moore, at some length. This examination was along immaterial and irrelevant matters, and had absolutely developed no facts in rebuttal of this witness' evidence, on his examination in chief, by the state's counsel. * * * Just wherein my statement is a 'comment on the facts' is beyond my legal comprehension; such a contention is puerile and nonsensical. I respectfully submit the matter to the court.

"[Signed] Joseph B. Lancaster, Trial Judge.
"Filed April 23, 1914.
                "M. A. Thigpen, Clerk."

We are somewhat at a loss to understand how, in view of the facts, as thus disclosed by the record—that a bill of exception was prepared by defendant's counsel, that its filing, on March 31st, is attested by the signature of the clerk and the judge, and that it was elaborately considered, as shown by the written reasons, the filing of which, on April 23d, is similarly attested—it could very well be said that no bill of exception was prepared or tendered, or why the judge should assume that the exception had been abandoned.

The ruling complained of was, clearly and prejudicially, erroneous. The witness had testified that deceased was supposed to be a skidderman by profession, and that he worked for the Great Southern Lumber Company, and it was competent for defendant to cross-examine him upon that testimony, and discredit him, by showing, from his own mouth, that deceased was a gambler by profession, and, as counsel state was their purpose, that he was employed by the witness as manager of a gambling game. The importance, to a defendant in a criminal prosecution, of discrediting any state witness may be assumed, since it is not to be supposed that the state places witnesses on the stand for the purpose of eliciting immaterial testimony. In the instant case, counsel for defendant say, in their brief, that the witness Moore had been permitted to testify that the deceased, when he fell, had said, "Garner shot me in the back, for nothing," and, from another bill of exception that we find in the record, we infer that he had given some testimony to the effect that the deceased was unarmed at the time of the killing, and that defendant sought to impeach that testimony.

Bill 4 recites that "counsel for the state asked the state witness Nelson to let him read what he testified to before the coroner's jury," to which defendant objected, and the objection was overruled.

[3] The note of evidence shows that the objection was that the state could not be permitted to impeach its own witness, and that the court ruled that the district attorney might be permitted to ask certain questions (which, as it appears from the statement per curiam, related to testimony which had been given by the witness before the coroner's jury), not for the purpose of impeaching, but to refresh the memory of, the witness. The judge seems to have predicated his ruling upon the fact that the witness proved to be unwilling, rather than upon the fact that the state was surprised. If that was the case, and from that point of view, the ruling would be erroneous. The state could not, for instance, upon another trial, place the same witness on the stand, and upon the plea of refreshing his memory read and repeat to him, in the presence of the jury, the testimony, or any part of it, given by him before the coroner's jury. The rule is that:

"Where a party is bona fide surprised at the unexpected testimony of his witness, he may be permitted to interrogate him as to previous declarations, inconsistent with the testimony given; the object being to test the witness' recollection and lead him, if mistaken, to review what he has said." State v. Williams, 111 La. 180, 35 South. 505; State v. Stephens, 116 La. 40, 40 South. 523.

It is clear, however, that, if a litigant has reason to believe that a witness will not confirm statements previously made by him, he has no right to call him to the stand in order, on pretext of refreshing his memory, upon his failure to confirm them, to get such state-

ments before the jury. We attribute no such purpose to the district attorney in this case, but, to the contrary, infer, from the statement of the judge, that he was taken by surprise; but the surprise, and not the unwillingness or evasion, of the witness should have been made to appear as the basis of the ruling, and the matter should not have been left to inference.

Bill 5 shows that counsel for defendant having asked state witness Moore whether he had not stated, about five days after the killing, to Z. M. Jackson, in Tate's Ice Cream Parlor, that he took the pistol of the deceased from under his coat, or clothing, a short time after he fell, and, he having answered "No," counsel for defendant, upon the cross-examination of state witness Jackson, asked him whether Moore had not made such a statement, at the time and place mentioned, to which the state objected, on the ground that the proper foundation had not been laid to impeach the witness Moore, he not having been put on his guard, in proper form, which objection was sustained.

All that is necessary to be done in order to lay the foundation for the impeachment of a witness, by proof of anything that he has said or done in relation to the cause, is to ask him, on cross-examination, whether he has said or done that which is intended to be proved, calling his attention to time, place, and circumstance. State v. Cazeau & Blanchard, 8 La. Ann. 115; State v. Angelo, 32 La. Ann. 408; 40 Cyc. 2628. The rule thus stated having been complied with, when the witness Moore was asked, on cross-examination, whether he had not made a certain statement, material to the case, at a certain time and place and to a certain person, and he having answered in the negative, the testimony offered to show that he had made such statement should have been admitted, and the failure to admit it was reversible error.

Bill 6 shows that, upon the refusal of the court to permit the impeaching question which counsel desired to propound to the witness Jackson, request was made for permission to withdraw Jackson and recall Moore, in order to meet the views of the court upon the subject of laying the foundation for impeaching him, and that the request was refused (the note of evidence reads) "as absolutely startling and unheard of." In the statement per curiam it is said that the state had the right to a redirect examination of Jackson, after which, and even after the state had closed, in chief, defendant, if he had that right, might have asked leave to recall Moore for the purpose stated, but that he did not so request. Elsewhere in the statement, however, it appears that the judge was of opinion that it would have been entirely inadmissible to have recalled Moore, under the circumstance, as defendant had failed, when the opportunity was afforded him, to lay the foundation for his impeachment by putting him on his guard, and that, moreover, the matter about which he was interrogated was irrelevant, and that, up to that time, there had been no evidence offered tending to show an overt act on the part of the deceased, and that the only testimony thereafter offered to that effect was that of the defendant himself, who testified that the deceased attempted to draw, or did draw, a pistol.

[4, 5] Defendant was under no obligation to put the witness on his guard, otherwise than as he did, by propounding the question, as heretofore stated, whether he had made a certain statement, at a certain time and place to a certain person; and, though the matter of permitting the recall of a witness in order to afford an opportunity to lay the foundation to impeach him is within the discretion of the court, the trial court, in the exercise of that discretion, will usually accord the permission if the witness whom it is desired to impeach is still within easy reach

and no undue delay will result. That no overt act had been testified to up to the time of the ruling in question is not surprising, as the defendant had, up to that time, offered no testimony at all; but that no such testimony would thereafter be offered, the trial judge could not then know; and the fact that only the defendant himself gave such testimony made it all the more important that he should be permitted to show, by way of impeaching the testimony to the contrary of the prosecuting witness, what that witness had said upon the subject, within a few days after the homicide.

[6] Bill 7 shows that a witness by the name of Dorsey was called to testify as to the general reputation, in the community in which he lived, of the state witness Moore; that he stated that he lived in the same town with Moore, and had known him nearly a year; that he was then asked whether he was acquainted with Moore's reputation "for truth and veracity"; that the question was objected to. The judge explains that he was, at that point, requested by the district attorney to instruct the witness as to the difference between general reputation and personal opinion, which he did, and that the witness, being then asked whether he knew Moore's general reputation, replied that he did not, "as he had not heard it discussed, except by two or three persons, in Bogalusa." Thereupon the objection that he was not a competent witness was sustained. If the instructions of the court went no farther than as thus stated, and the witness, guided by them, concluded that he did not know Moore's general reputation, his testimony was properly excluded. In his statement, however, the judge goes on to say that:

"A witness who acknowledges that he acquires his knowledge of the general reputation of a person living in the same community with him from a conversation with two or three persons, out of 10,000, who make up that community, is not competent to testify what the general reputation of that person is, for anything. It might be that a person may live in a community composed of 10,000 persons, and his general reputation may not be a subject of discussion. That fact might, by straining a point, serve as a basis to say that his general reputation was good, but it would hardly be sufficient to say that it was bad."

If the judge gave the opinion thus expressed to the witness as an instruction (a matter which we are unable to determine), we think he erred, since the question whether the witness could, by discussions with, or hearing discussion by, two or three persons, or a greater or less number, have acquired the information necessary to give value to his testimony on the subject of Moore's reputation was one that was within the province of the jury, and not of the judge.

[7] Bill 8 was reserved to the overruling of an objection to the question, propounded to defendant, on cross-examination, "Where did you go after the shooting had taken place?" the objection having been predicated upon the rule that the state must confine itself, in cross-examining the witnesses called by defendant in a criminal prosecution, to matters testified to in the examination in chief. That rule does not preclude the cross-examination of a witness upon matters not touched upon in his examination in chief, when the purpose is to test the credibility of the witness. State v. Willingham, 33 La. Ann. 537; State v. Gregory, 33 La. Ann. 737; State v. Johnson, 48 La. Ann. 437, 19 South. 476. And, in this instance, that purpose was stated. It appears, moreover, that defendant answered that he had gone home, and it does not appear that he sustained any prejudice by reason of such answer.

Bill 9 shows that counsel for defendant asked his client whether he and deceased ever had any previous difficulty, to which defendant answered "No;" that the district attorney then objected to any further question of similar import, which objection was sustained, and, defendant having objected to the ruling, the objection was overruled; hence

the bill. The matter presented is rather too vague to require any ruling by this court.

[8] Bill 10 contains the recital that defendant objected to the judge's charge upon the law of self-defense, on the ground that it was "confusing and misleading and so arranged as to be very prejudicial to the defendant." The judge refused to sign the bill for the reason, as stated by him, that "no such bill was reserved"; that the note of evidence correctly states the grounds of objection; and that the bill does not correspond therewith. A bill of exception which the judge has refused to sign is no bill, and the remedy therefor is by way of the writ of mandamus to compel the signing.

[9] Bill 11 was reserved to the refusal of the judge to give certain special charges. We concur with the judge that the charge, as given, sufficiently covered the law of the case.

Bill 12 was reserved to the overruling of the motion for new trial, and presents nothing that has not been considered.

By reason of the errors presented by bills 3 and 5, it is ordered and adjudged that the verdict and sentence appealed from be set aside, and it is further ordered that this case be remanded, to be further proceeded with according to law.·