304 So.2d 300 (1974)
STATE of Louisiana, Appellee,
v.
Roosevelt KAUFMAN, Appellant.
No. 54557.
Supreme Court of Louisiana.
October 28, 1974.
Rehearing Denied November 27, 1974.
*301 David W. Robinson, Baton Rouge, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellee.
TATE, Justice.
On a prior appeal, the defendant's conviction for murder, La.R.S. 14:30, was reversed, and the case remanded for new trial. 278 So.2d 86 (La.1973). On the retrial, he was again convicted and sentenced to life imprisonment.
Upon the present appeal, we must once again reverse. On the re-trial, three substantial prejudicial errors occurred. They had the effect of denying the defendant a fair trial and of allowing his conviction to be based upon constitutionally inadmissible evidence.
Facts
The defendant is charged with the brutal murder of Jessie Guthrie on June 9, 1970. Guthrie, a night attendant, was kidnapped between 4:00 and 5:20 A.M. from the service station where he worked, was robbed, and then executed.
We have recently affirmed the conviction of Iley Dotch for this murder. State v. Dotch, 298 So.2d 742 (La.1974). It is the theory of the state that the present defendant, Kaufman, was Dotch's confederate *302 in this murder. The theory of Kaufman's defense is that, as the state witnesses testified, he was checked into a motel during the time of the kidnapping and murder, and that the probable confederate of Dotch was Holmes, a chief state witness against him.
The testimony shows that Holmes, Dotch, the defendant, and a woman named Delores Williams were together drinking wine and using pep pills at least until 12:00 midnight of the day preceding the murder, which occurred between 4:00 and 5:20 A.M. (Holmes claims he did not again see Dotch and Kaufman until after the murder.) Their escapades had included shooting off Holmes' .410 shotgun, later identified as the murder weapon, in a neighborhood quarrel.
Holmes left the trio at about 12:30 P.M. Later, Delores Williams was dropped off and checked into Room 22 of a motel at 3:00 A.M. Kaufman went to her room about 4:00 A.M., according to her testimony and that of the motel manager (testifying for the state). The latter also testified that Dotch drove up and asked for Room 22 (next to his office) at about 6:00 A.M.
The motel manager did not hear Kaufman leave the room after he went to it at 4:00 A.M. However, he admitted that it was possible that Kaufman could have gone down the hall and out the fire exit at the end of the one-story building.
Delores Williams testified that the defendant Kaufman had come back to the room an interval after she had checked in, that she woke up and found him there beside her, that they had sexual relations, that she had gone back to sleep, and that Dotch had come to the motel room after daylight, some time later.
The chief evidence against the defendant Kaufman is his alleged admission of his complicity to Holmes, as well as a statement to such effect to his common-law wife, Patricia Butler, on the day following the murder. Some cigarettes similar to those stolen from the service station were also connected with the motel room and with him; his counsel suggests that the post-murder gift of them to Kaufman by Dotch does not prove Kaufman a principal subject to conviction for the murder.
Errors
The three reversible errors we find are:
(1) The former testimony of four witnesses at the first trial was read to the jury, without the State having made a diligent effort to secure their attendance in person, as required by the United States Constitution;
(2) Despite repeated requests by the defendant's counsel, the State was permitted to prove an out-of-court statement by Patricia Butler (his common-law wife) that the defendant had admitted his complicity in the crime to her, without the caution heavily required by state law that such statement was not direct proof of the defendant's guilt, but that instead its admissibility was limited for the jury in its evaluation of the witness' credibility;
(3) The final argument of the prosecuting attorney referred to prejudicial matters not in evidence and also included a statement that the defendant would not now be before the jury except for the prosecutor's belief that the defendant was guilty, in defiance of the well-established prohibition against such prejudicial argument by the State's attorney.
1. Former Testimony Instead of Live Witnesses (Bills of Exceptions Nos. 2, 3, 10, and 11)
Four witnesses who established facts important to the State's case did not testify in person at the second trial. Instead, their transcribed testimony on direct and re-direct at the first trial was read to the jury in this second trial. Only a perfunctory effort was made to locate these absent witnesses and, for the most part, only just before the present trial or after it had started. This was done in contravention *303 of the Sixth Amendment of the United States Constitution, as interpreted by Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), and of the decision of this Court following it, State v. Sam, 283 So.2d 81 (La.1973).[1]
The Sixth Amendment requires that the accused in criminal cases is entitled "to be confronted with the witnesses against him." The Louisiana Constitution likewise so provides. Art. I, Section 9 (1921); Art. I, Section 16 (1974). This important constitutional requirement of live testimony wherever possible was here offended.
The purposes underlying this constitutional requirement are stated as follows in California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970): "Confrontation: (1) insures that the witness will give his statements under oaththus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the `greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." (Italics ours).
Our decision in State v. Sam, 283 So.2d 81 (La.1973) relied upon and extensively quoted from the United States Supreme Court decision in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). This decision described as fundamental the right of an accused in a state trial to have the live testimony of a witness before the trial jury for the trial jury's evaluation of a witness' credibility (except in limited circumstances where a cross-examined witness is truly unavailable for the trial despite diligent good-faith prosecution efforts to obtain his presence there).
In Barber v. Page, the nation's high court unanimously stated, as plainly as the English language permits, that in circumstances such as the present a state conviction must be reversed where transcribed testimony is introduced instead of the live witness: The constitutional right of confrontation is so importantnot only to permit cross-examination, but also to permit the trial jury to judge the witness' credibility face to facethat the prosecution cannot introduce the transcribed testimony even of a cross-examined witness (as here and as in State v. Sam), unless the State has first made a good-faith and diligent effort to obtain the presence at the trial of the out-of-state witness (including by use of a uniform act for such purpose, adopted by Louisiana and almost all states.[2] In State v. Sam, we attempted to explain, as clearly as we could, the holding in Barber v. Page and its application to Louisiana criminal trials. Summarizing the holding and the essential reasons for this holding, we quoted extensively from that decision of the United States Supreme Court, and we do so once again:
"In speaking of the right of confrontation guaranteed to the accused in state trials by the Sixth and Fourteenth Amendments to the federal constitution, the United States Supreme Court stated in Barber v. Page, 390 U.S. 719, 721, 88 S.Ct. 1318, *304 1320, 20 L.Ed.2d 255 (1968); `Many years ago this Court stated that "[t]he primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions[3] or ex parte affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). More recently, in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Pointer v. State of Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). See also Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L. Ed.2d 934 (1965).'" (Italics ours.)
The present witnesses were cross-examined at the former trial, although their cross-examination was not introduced at the present trial. Wigmore felt cross-examination to be the primary purpose of confrontation, with only a secondary advantage being the demeanor evaluation available to the trier of fact. 5 Wigmore on Evidence, Sections 1395, 1397 (3d Ed. 1940). However, as pointed out by McCormick on Evidence, Section 252, p. 606 (2d ed. 1972), by virtue of Barber v. Page the federal constitutional right embraces "The personal presence of the witness at the trial, enabling the trier to observe his demeanor as an aid in evaluating his credibility and making false accusation more unlikely * * *."[4]
In order that the transcribed testimony of a witness at a former hearing be held admissible at a subsequent trial, the federal cases require the following: 1. The defendant must have been represented by counsel at the earlier hearing. California v. Green, cited above; Barber v. Page, cited above; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); 2. The witness testified under oath; 3. The witness was cross-examined, or else there was a valid waiver of the right to cross-examination. Barber v. Page, cited above; 4. At the time of the trial, the witness (whether out-of-state or not) is unavailable or unable to testify. Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); Barber v. Page, cited above; and 5. The state has made a good-faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate. Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); Berger v. California, cited above; Barber v. Page, cited above.
The four witnesses whose transcribed testimony was read to the jury were:
(a) Mrs. Maxine White, the last person to see Guthrie alive at 4:00 A.M. The district *305 attorney's investigator had not located her a month before the trial through simple checking of her initial address, utility records, and a city directory. When at the trial it was called to his attention he had not checked with the neighbor mentioned in her former testimony, nor at her former employer's place, he reported back a little later in general terms that he had contacted both these sources without success. His testimony does not show that he sought to locate her through her husband's name rather than hers, or had sought to locate her husband, for instance; nor does it show more than a perfunctory check at the former employer's (did he just call the telephone operator, did he check with personnel, on what basis is his lack of forwarding information shown to be reliable?);
(b) Paul Clements, the day manager of the robbed service station, who identified articles found at the scene of the murder and testified that cigarettes were taken from the station, and who also fixed the outer time limits of the kidnapping by testifying that he had arrived at the deserted station at 5:20 A.M. The investigator went to the service station where Clements had worked and to another station and talked to the employers there. He also said he had gone to Clement's former home, although he had no record of it and did not know the address. At the prodding of the trial judge, he left the stand to trace down (for the first time) the information he had received that Clements had moved to Hammond; he then came back to the stand to report that he had received telephone information from the sheriff's office in Hammond that a Paul Clements had moved to Baton Rouge, but upon checking found this not to be the Paul Clements in question. He had never checked with supervisory employees of Clements' former employer, for instance; nor made any effort to check the personnel office for information as to Clements' present whereabouts.
(c) Mary Lane, a maid at the motel, who testified as to empty cigarette cartons found in Room 22 occupied by the defendant Kaufman and Delores Williams (and visited by Dotch), and as to mud found there, as well as to seeing one of the two at about seven in the morning[5]at the motel. On the morning of the trial, the investigator went to an address he found she had moved to since he had located her a month earlier at another trial. He found the address vacant and made no further effort to locate her except by calling the utilities and telephone company.
(d) Willie Moore, an employee of a service station near the motel, who saw a white automobile similar in description to Kaufman's going to the motel between 5:30 and 6:00 A.M. The investigator found from the manager of the service station that Moore had moved to Houston and gave up further efforts to locate him.
In summary, the perfunctory efforts on the eve of and during the trial to locate these witnesses fall far short of the diligent and good-faith efforts required to locate a witness before he can be found to be unavailable so as to permit his testimony by paper instead of in person. The federal and state confrontation clauses impose a heavy burden before such constitutionally-disfavored evidence may be used instead of testimony from live witnesses.
2. Impeaching Testimony Permitted Without Trial Judge Caution Required (Bill No. 6)
Patricia Butler, the defendant Kaufman's "common-law wife" and the mother *306 of several of his children, was subpoenaed by the state. She denied on the stand that Kaufman and Dotch had told her, on the morning following the murder, where and how Dotch had gotten a paper sack full of cigarette packages he brought to her house.
She was then asked what she had told the police at 6:20 P.M. that evening. The defendant objected. Outside the presence of the jury, the state averred that it intended to prove a prior contradictory statement. The defendant objected to this as improper impeachment, on the ground that the state was not surprised. The defendant also asked, in the alternative, that the trial court instruct the jury that the question and answer went to the credibility of the witness Butler and not to the guilt or innocence of the defendant Kaufman.
As to the first ground, we are inclined to believe that the state should not be able to impeach its own witness on the ground of surprise. In at least two prior court appearances subsequent to the out-of-court statement, the witness denied that Kaufman had told her of any involvement in the murder.[6] (She testified each time that she had voluntarily told the police a lie about Kaufman's involvement because of her jealous anger at finding he had slept with Delores Williams that early morning.) Nevertheless, we think that the state showed sufficient hostility of the witness, the defendant's mate for many years, as to justify impeaching its own witness by a prior statement. La.R.S. 15:487; State v. Rossi, 273 So.2d 265, 269 (La.1973).
The alternative ground of the objection is well-founded, however. Because of the possibility of prejudicial abuse of testimony of unsworn out-of-court statements, since at least 1897 our jurisprudence has held that such prior inconsistent statements are admissible only as to the issue of the credibility of the witness involved, and not as substantive evidence of a defendant's guilt. State v. Ray, 259 La. 105, 249 So.2d 540 (1971). This has been the rule of most American jurisdictions. Further, as State v. Ray notes, the defendant upon request is entitled to have the trial court, at the time this impeachment evidence is introduced, caution the jury of this limited purpose of this prior inconsistent statement.
Here, prior to and at the time of the questioning, the defendant three times requested that the trial court give this limiting instruction. Tr. 269, 272, 273. The trial court refused, apparently accepting the prosecutor's argument that the answer would not be impeaching testimony if the witness admitted making the prior inconsistent statement.
Thereupon, the witness did admit, on the state's questioning, that she had made the inconsistent statement, although she now claimed under oath that it was false. She testified that she had first gone to the police out of jealous rage, but that thereafter she had consistently denied under oath that Kaufman had told her he was involved in the killing and robbery as she had told the police.
We find no support for the state's argument, and it cites no authority in its support, that the testimony of the impeaching witness admitting the prior inconsistent statement is not evidence of prior contradictory statements", La.R.S. 15:487, used for purposes of impeachment. The witness' testimony of the content of her prior out-of-court statement is, in fact, admissible *307 for no other purpose than for impeachment. It thus required the limiting instruction, just as much as would evidence of this prior inconsistent statement from the lips of some other witness than herself.
The circumstance that the witness admitted that she had made the unsworn hearsay (as to the defendant) statement previously made by her out of court, although now in court swearing it was false, did indeed prohibit further independent evidence to prove such inconsistent statement. La.R.S. 15:493. But this admission does not change the evidence that her inconsistent statement was made from other than impeaching testimony, not admissible as to the guilt or innocence of the defendant but only as to the credibility of the witness who made such statement. As impeaching evidence, the limiting instruction was required, as the defendant thrice requested, so as to avoid undue prejudice to the defendant.
There is therefore merit to this bill also.
3. Improper Closing Argument of the Prosecutor (Bill No. 12)

During his closing argument, the prosecutor stated, "I don't believe that Willie Holmes, a friend of Kaufman, confessed to robbery and murder, unless it was true" (objection made by defendant), then immediately a reference to Delores Williams as yet a third participant in the killing (objection), then, "Gentlemen, my argument, when I speak in a personal way, my argument is based on the evidence, and believe me, that's right, I personally feel from the evidence that I have a case; otherwise, I wouldn't be here, because it's within my power to be here or not be here" (objection). Tr. 408-410.
The defendant's objections to each of the immediately consecutive statements at the close of the State's argument were overruled, as were; his two motions for mistrial.
The ground of the objections essentially was that the prosecutor was expressing his personal opinion as to the defendant's guilt. (The defendant also points out that there is not a word of testimony that Holmes confessed to robbery and murder, so that such objected-to testimony was comment on evidence not before the jury.) In overruling the objections, the court did admonish the jurors that they were the sole judges of what had been proven and that the arguments of counsel for either side were not evidence.
Under La.C.Cr.P. Art. 774, the argument of both prosecution and defense "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. * * *."
Partly based upon this statutory prohibition (but also for reasons of fairness which extend beyond it), a prosecutor in Louisiana (as well as in almost all other American jurisdictions) is prohibited from expressing his personal opinion of the defendant's guilt in his argument to the jury. State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964); 2 Marr's Criminal Jurisprudence of Louisiana, Section 664 (1923); 5 Wharton's Criminal Law and Procedure, Section 2083 (Anderson ed., 1967); Annotation, 50 A.L.R.2d 766 (1968). Nevertheless, as these sources indicate, the expression of such an opinion by the prosecutor is often held to be nonreversible, if it is apparent to the jury that it is expressly or impliedly only based on the evidence presented to the jury rather than on personal knowledge of facts outside the record.
Wharton's cited above at p. 245, explains the underlying reason for this rule of most American jurisdictions: "It has sometimes been stated, in support of the foregoing *308 rules or holdings, that the assertion of the prosecutor's belief, opinion, or knowledge constitutes an invasion of the province of the jury and a usurpation of its function to declare the guilt or innocence of the accused. This is, however, a merely technical or theoretical argument. The more practical and substantial reasons or grounds of objection usually assigned are that the statement complained of injects into the case irrelevant and inadmissible matter or a fact not legally produced in evidence, and adds to the probative force of the testimony adduced upon the trial the weight of the prosecutor's personal influence, knowledge, professional opinion, or the influence of his official position." (Italics ours.)
The authoritative American Bar Association Standards relating to the prosecution function, Standard 5.8(c) (1971), expressly provides: "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." Standard 5.8(d) further provides: "The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."
Commentary b of the Standard explains: "Such expressions by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of his office and undermine the objective detachment which should separate a lawyer from the cause for which he argues . . . The line between permissible and impermissible argument is a thin one. Neither advocate may express his personal opinion as to the justice of his cause or the veracity of witnesses. Credibility is solely for the triers, but an advocate may point to the fact that circumstances or independent witnesses give support to one witness or cast doubt on another. The prohibition goes to the advocate's personally endorsing or vouching for or giving his opinion; the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own."
The argument of the present prosecutor goes beyond permissible bounds. He emphasized to the jury that he would not be prosecuting if he did not feel he had a case, "otherwise I wouldn't be here, because it's within my power to be here or not to be here". This type of argument is an attack on the presumption of innocence afforded all accused before our courts. It emphasizes the function of the prosecutor as an officer of government and tends to exploit it. Such an argument by the prosecutor is almost universally held to be objectionable. See Annotation, cited above, Section 6(b) at 50 A.L.R.2d 787.
This type of argument has been held to be erroneous and prejudicial in Louisiana since at least State v. Accardo, 129 La. 666, 56 So. 631 (1911). In the present case, taking into consideration also the other prejudicial errors, this improper and prejudicial argument so long reprobated in our state is an additional reason for reversal.
Conclusion
We cannot hold the errors to be harmless. The denial of the important right of confrontation is "a substantial violation of a constitutional or statutory right", which cannot be considered harmless error. La. C.Cr.P. art. 921, so providing; State v. Sam, 283 So.2d 81 (La. 1973). The denial of the additional rights of fair trial here offended have likewise been regarded for decades as reversible error.
The conviction must therefore be reversed because infected with prejudicial and constitutionally inadmissible testimony and produced by impermissible prosecutorial argument. Under other circumstances and in other times, we should say no *309 more. Nevertheless, our responsibility to the judicial function and to the constitution we are sworn to uphold invites us to outline once again our constitutional duty with regard to this appeal and, however, unpleasant it is for us to do so, to note that the cause for the present reversal does not lie with the reviewing court in the performance of such duty.
It is emotionally suggested that we should affirm this conviction, despite this denial of constitutional right, because of a view that the state must have adequately proven the defendant's guilt, as shown by the verdict of two successive trial juries.
In the first place, a jury verdict based on argument improperly appealing to racial prejudice (first verdict) or infected with unconstitutionally admitted evidence (second verdict) does not prove guilt. Under our time-honored principles of judicial review, it is the province of the jury, not of an appellate court, to determine guilt or innocenceon the basis of properly admitted evidence. A court cannot deny a criminally accused his constitutional rights because it and the prosecutor determine that the accused is guilty of the crime of which before his guilt is determined by a jury on the basis of constitutionally received evidencehe is merely accused. An accused, even if eventually convicted properly, is entitled to the protection of the constitutional guarantees of a fair trial to determine whether the present conviction is in accordance with law and our constitutions.
In the second place, the right of confrontation of which the present accused has been deprived is guaranteed to him by the federal constitution. If we overlook this denial in this state review, the federal courts will simply set aside the conviction and order a new trial as in the case of State v. Holmes, 258 La. 221, 245 So.2d 707 (1971), certiorari denied, Holmes v. Louisiana, 406 U.S. 909, 92 S.Ct. 1612, 31 L.Ed.2d 820 (1972), where a new trial was ordered in Civil Action 72-178 on July 23, 1972 by the United States District Court, Middle District of Louisiana, on the basis of the denial to accused of his constitutional right of confrontation of a witness against him in the state court prosecution. As in State v. Sam, 283 So.2d 81 (La. 1973), where we reversed a conviction based in part on non-live evidence introduced in defiance of the federal constitutional confrontation rights, it is the duty of this court as well as of the federal courts to enforce the federal constitution.
If we ignore our duty and leave to the federal courts the unpopular duty of reversing an unconstitutional conviction, we do not serve the institution of justice, nor the state nor federal constitutions we are sworn to uphold.
Further, we do not save the state the expense of the eventual re-trial which will be ordered by the federal courts. We simply delay it, at the cost of further staleness of the evidence and of further diversion of the time of judges, court personnel, prosecutors, and defense counsel in the cumulative post-conviction proceedings which result if we ignore the plain denial of constitutional right evidenced by the present prosecution.
We are aware of and regret the additional expense to which the parish will be put by a new trial, as well as the additional anguish caused to the survivors of the victim by reopening old wounds. Nevertheless, we cannot let such factors deter us from our sworn constitutional duty to permit the defendant a fair trial, at which only constitutionally permissible testimony is received; of which, until now, he has been deprived by repeated prosecutorial error.
Decree
For the reasons assigned, therefore, we reverse the conviction and sentence, and we remand this case for a new trial in accordance with law.
Reversed and remanded.
*310 SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent and assign written reasons.
SANDERS, Chief Justice (dissenting).
The trial judge's finding that the four witnesses were unavailable is entitled to great weight and should not be reversed in the absence of a clear showing of error. I perceive no adequate basis for upsetting the trial judge's finding. In my opinion, the case is very similar to State v. Nelson, 261 La. 153, 259 So.2d 46 (1972), in which this Court upheld the finding of unavailability. Just as in that case, after the subpoena was returned with the notation "unable to locate," the officers here checked the last known addresses, city directory, utility company, telephone company, and employers. I am not prepared to hold that this was not a good-faith effort to locate the witnesses.
The second complaint is that the trial judge failed to instruct the jury that the prior inconsistent statement of Patricia Butler was admissible only for the limited purpose of testing credibility and not as substantive evidence of guilt. This complaint discloses no valid constitutional ground under the confrontation clause for upsetting the conviction. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L. Ed.2d 489 (1970); McCormick on Evidence, 2nd ed. § 251, p. 604 (1972).
Since 1897, Louisiana has followed the rule that when a witness, other than the defendant, is impeached by the admission in evidence of a prior inconsistent statement, the statement is admitted only on the issue of credibility and not as a substantive evidence of defendant's guilt. See State v. Ray, 259 La. 105, 249 So.2d 540 (1971); State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969); State v. Reed, 49 La.Ann. 704, 21 So. 732 (1897). Upon a defense request, the trial judge is required to instruct the jury as to the limited purpose of the inconsistent statement at the time of its admission. State v. Ray, supra.
In the present case, the witness distinctly admitted making the prior inconsistent statement. Hence, under LSA-R.S. 15:493, proof of the prior statement was inadmissible. See State v. Jackson, 248 La. 919, 183 So.2d 305 (1966). The witness is considered as having impeached herself. 98 C.J.S. Witnesses § 609, p. 611. Accordingly, the state made no offer of such proof.
Under these circumstances, it would seem to me that no limiting instruction would be required.
If I am in error on this point, however, I am of the opinion that, in the light of the entire record, the failure to give the cautionary instruction was harmless error. See LSA-C.Cr.P. Art. 921.
A careful examination of the prosecutor's closing argument to the jury discloses that his conclusions were based on the evidence. In fact, so there would be no misunderstanding, the prosecutor clearly stated: "When I speak in a personal way, my argument is based on the evidence. . ." In my opinion, the bill of exceptions reserved to the closing argument lacks merit.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
For the reasons assigned by the Chief Justice and Mr. Justice Marcus, I dissent.
MARCUS, Justice (dissenting).
The right of confrontation in cross-examination is fundamental and essential to a fair trial. However, an exception has been made to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. In the instant case, defendant was being retried for the same crime. Since there was adequate opportunity to cross-examine the witnesses at the first *311 trial, the transcribed testimony of the witnesses at the first trial bore sufficient "indicia of reliability" and afforded "the trier of fact a satisfactory basis for evaluating the truth of the prior statement." Also, the absent witnesses, consistent with the requirement of the confrontation clause, were found by the trial court to be unavailable at the time of the second trial even though the state had in good faith attempted to locate them. The question of "availability" is for the trial judge in his discretion to resolve, and his ruling will not be disturbed unless there has been a clear abuse of such discretion. I find none here. Therefore, there was no constitutional error in permitting the prior recorded testimony of these witnesses to be read to the jury in the second trial. Poe v. Turner, 490 F.2d 329 (10th Cir. 1974); cf. Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Further, I do not agree with the majority's finding that there are other reversible errors. In my opinion, they are harmless. La.Code Crim.P. art. 921.
Accordingly, I respectfully dissent.
NOTES
[1] It is somewhat surprising that this error occurred, since State v. Sam was rendered on August 20, 1973, rehearing denied September 24, 1973, prior to the present trial of October 30 and November 1, 1973. The present assistant district attorney was the prosecutor in State v. Sam, which applied Barber v. Page and reversed a conviction for the use of preliminary examination testimony of a witness upon inadequate proof of a good faith and diligent effort to locate an out-of-state witness.
[2] The uniform act adopted in Louisiana by Act 285 of 1936, was first placed in the Louisiana Revised Statutes at 15:152.1 through 152.5 (1950), and is now found in the Louisiana Criminal Code as Articles 741 through 745 (1966). A list of the statutes by which other American jurisdictions have adopted the uniform act is contained in a table of the enacting states set forth preceding Article 741 of West's LSA-Code of Criminal Procedure (1967).
[3] As Wigmore stated, "There is on principle no distinction between a deposition and former testimony as to the conditions upon which either may be used at the trial." 5 Wigmore on Evidence, Section 1401 at p. 146 (3d ed., 1940).
[4] However, if despite diligent and good-faith effort the state is unable to locate a witness, his testimony taken under cross-examination at the previous trial is admissible under the limited exception to the confrontation rule permitted where the defendant is truly unavailable. See Barber v. Page at 390 U.S. 725-726, 88 S.Ct. 1322. See also State v. Nelson, 261 La. 153, 259 So.2d 46 (1972). McCormick notes this is logically incongruous with eyewitness confrontation, but nevertheless is a practical due process balancing of competing values. McCormick, Section 253 at p. 608.
[5] At the earlier trial, she identified the man she saw as depicted by a photograph introduced in evidence at the earlier trial as S-14, Tr. 363, and also as the defendant sitting at the end of the table at the first trial, Tr. 365 (at which there were two defendants). Since S-14 was specifically not introduced in evidence at the present trial, Tr. 391-92, this portion of the testimony is incomprehensible as well as inadmissible. See also Tr. 371.
[6] A party may not impeach its own witness, unless taken by surprise, or unless the witness shows hostility. La.R.S. 15:487. See also La.R.S. 15:488. This impeachment may be made only by inconsistent statement. La.R.S. 15:487. Long ago this court pointed out: "It is clear, however, that, if a litigant has reason to believe that a witness will not confirm statements previously made by him, he has no right to call him to the stand in order, on pretext of refreshing his memory, upon his failure to confirm them, to get such statements before the jury." State v. Garner, 135 La. 746, 752-753, 66 So. 181, 183 (1914). See Young v. United States, 97 F.2d 200, 117 A.L.R. 316 (C.A.5, 1938). See also Pugh, 22 La.L.Rev. 397-98 (1962).