363 So.2d 513 (1978)
STATE of Louisiana
v.
Limmie WEST.
No. 61948.
Supreme Court of Louisiana.
October 9, 1978.
John M. Blanchard, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
*514 CALOGERO, Justice.
Limmie West was convicted after a jury trial of attempted armed robbery and sentenced to forty-nine years and six months at hard labor on July 2, 1969. There was no appeal of the conviction and sentence but West did file a petition for a writ of habeas corpus in the district court the following year, alleging that his counsel conferred with him for only five minutes prior to trial. The petition set forth that the trial commenced after this short conference when the trial court denied a motion for continuance setting forth counsel's inability to confer with West and his lack of knowledge of the facts of the case. After holding an evidentiary hearing the district court denied West's petition, finding that defense counsel had adequate time to prepare for trial and determining that West and the attorney had conferred for more than five minutes. Writs were sought in this Court and denied.
Thereafter, West sought habeas corpus relief in the United States District Court for the Eastern District of Louisiana. The federal district court granted relief on December 17, 1971, finding that defense counsel's representation of West was ". . . only perfunctory, without adequate preparation." The State of Louisiana was ordered to retry West within thirty days, failing which West was to be released from custody. The State appealed the federal district court judgment and the Fifth Circuit affirmed, agreeing that the district court correctly found that West's legal representation was so inadequate that he was denied his constitutional right to effective counsel. West v. Louisiana, 478 F.2d 1026 (5th Cir. 1973). The state sought a rehearing which was granted en banc. On rehearing, the Fifth Circuit remanded to the federal district court for reconsideration of the claim of ineffective representation by West's privately retained attorney in light of its decision in Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir. 1975); West v. Louisiana, 510 F.2d 363 (5th Cir. 1975). The federal district court adjudged West's counsel ineffective by Fitzgerald v. Estelle standards, and again ordered retrial within thirty days (or release, if the state elected not to timely retry West).
The state chose to retry West rather than appeal the adverse judgment, and West was again convicted after a jury trial in 1975 and sentenced to serve forty-nine years and five months at hard labor on November 14, 1975. West appeals this conviction and sentence, relying on one assignment for a reversal.
The facts of this case, and the trial testimony which we deem necessary for a proper resolution of the issue presented on appeal, are as follows:
At approximately 2:00 P.M. on April 25, 1969, five men were congregated near the meat counter in the rear of Jeanfreau's Supermarket on Mazant Street in New Orleans. The group included: the owner, Jeanfreau; the butcher, Donnely; a salesperson, Patterson; and two patrons, Moraga and Knight. As the men stood talking in the vicinity of the meat counter's cash register the defendant intruded, brandishing a gun. Some of the men present heard the defendant mumble unintelligibly and witnessed him fire two shots which struck the butcher, who had stepped away from the group to answer the telephone. After firing the two shots defendant fled from the store. The owner, Jeanfreau, chased the defendant and exchanged fire with him but the defendant escaped. West was identified by Patterson a few days after the incident, when the police conducted a photographic line-up at the supermarket. On May 5, 1969, West was arrested and was subsequently identified in a corporeal lineup by Jeanfreau, Patterson, Moraga and Knight. Only Donnely, who testified that he at no time saw the person who shot him, was unable to identify West as the person who committed the April 25, 1969 offense.
In testifying for the state, Patterson related that he first saw West when he turned away from the conversation in which he was engaged in response to a sound of mumbling. On turning, he was confronted with a gun in his face and reacted by stepping behind the meat counter and *515 shouting a warning to the others. He dived for the floor, at which time the gunman stepped behind the counter and fired two shots, striking Donnely, the butcher. Patterson related that he carried in his memory an indelible impression of the gunman's face, which enabled him to positively identify West in the photographic and corporeal line-ups. He also made an unequivocal incourt identification at the trial.
Moraga's testimony followed that of Patterson at the trial. His first glimpse of the defendant was also prompted by mumbling he heard. On turning in the direction of the sound Moraga saw the armed defendant fire and observed the butcher as he fell. Moraga stated that he clearly viewed the gunman whom he subsequently identified at a line-up. In observing the gunman during the commission of the offense, Moraga noticed a band-aid on the man's neck. On cross-examination Moraga refused to admit that he could have mistakenly identified West as the perpetrator of the crime. He persisted in his view that there was no possibility that his identification was in error, and related that he clearly viewed West during the short time he was in the store. Before leaving the stand, Moraga identified West in court, stating that he was the person who committed the crime being prosecuted.
Knight, one of Jeanfreau's patrons, testified at the trial for the state. He first noticed West when the gunman exhibited his gun, mumbled something and then shot the butcher. Knight, like Patterson and Moraga who testified before him, related that he had identified West at the line-up on the basis of his observation of the defendant at the time of the offense. He reported that he had seen West in the store's vicinity on prior occasions and recalled that at the time of the commission of the crime West had a band-aid on his neck. On cross-examination defense counsel questioned Knight with regard to his stated belief that he had seen West in the neighborhood prior to the crime and Knight related that West had two brothers who had worked with him at the cement plant, where he had been employed before his retirement. Asked if he believed the two men to whom he referred to be the defendant's brothers, Knight replied affirmatively and, when asked who they were, stated "West". Knight persisted in his impression that the names of the two men with whom he worked were West and, asked if he could be mistaken about the men being the defendant's brothers, answered that he was pretty sure they were his brothers, that they had the same name.
A witness named Mayville, employed in his parents' grocery near the Mazant Street location of Jeanfreau's, also testified for the state. He related that shortly before the time of the commission of the crime a man entered his store to buy band-aids. Lacking sufficient money with which to pay for his purchase, the man went outside to his vehicle to get more change. Mayville observed the man approach a truck containing two people, from whom he obtained more money with which to purchase the bandages. This testimony will be revealed by later discussion to have corroborated the testimony of another party (Sturgis), the admission of which is urged as error upon this appeal.
In addition to the testimony outlined above, the State introduced the testimony of Jeanfreau, the fourth person who identified West as the perpetrator, in the form of his testimony given at West's prior trial for this offense. Between the times of the first and second trial Jeanfreau had died; thus, he was unavailable to testify at the second trial. The State also introduced the testimony of one Charles Sturgis by means of reading into the record a portion of the prior trial transcript; Sturgis had driven West and a companion to the vicinity of the Jeanfreau store moments before the offense. He had complied with the request of West's companion that he wait for their return. In addition to the obvious significance of Sturgis' testimony, he related a purchase by him of band-aids, one of which he stated was "put on" in his presence, by West. Sturgis, like Jeanfreau, died in the interval between the first and second trials, and thus was unavailable to testify.
*516 After presenting testimonial evidence relating the deaths of Jeanfreau and Sturgis, the state introduced the death certificates. The prosecutor then offered into evidence the earlier trial testimony of Jeanfreau, to which the defense objected. The jury was removed at defendant's request and the court entertained argument relating that because the results of the trial at which Jeanfreau testified initially were reversed due to the federal court's determination of defense counsel's lack of preparation, there could not have been adequate cross-examination of Jeanfreau. This lack of adequate cross-examination was argued to preclude admission of Jeanfreau's testimony. Admission of the deceased Jeanfreau's testimony would deny West his constitutional rights to cross-examination and confrontation, defense counsel argued.
Aware that the state planned to offer the earlier trial testimony of the deceased Sturgis as well, defense counsel sought and was granted leave to argue his objection to this proffer, too. Defense reurged the argument made in connection with the offer of Jeanfreau's testimony, adding that Sturgis' testimony was considered most damaging and suggesting that the record ". . . further demonstrates areas of cross-examination that could have been gone into, and were not gone into, that we would like to go into at this trial, namely, that he [Sturgis] was arrested, he was an accomplice, etc., etc., etc."
The trial court ruled that testimony from a prior proceeding could be used provided the witness was unavailable and the defendant had had the right of cross-examination when the proffered testimony was initially given. Noting that even preliminary examination testimony is permitted to be introduced when the requisite conditions are met, the court observed that such a hearing is a "first stage" proceeding at which defense counsel is usually not as well acquainted with the facts as he will be later. The court opined that the testimony proffered in this case is better than preliminary hearing testimony, notwithstanding the determination that defense counsel at the prior trial was perhaps not prepared, and permitted the introduction of the offered testimony of Jeanfreau and Sturgis, which was read into the record.
This Court has determined in State v. Kaufman, 304 So.2d 300 (La.1974) that introduction of testimony given at prior hearings may be introduced, without offending the confrontation and cross-examination clauses of the federal and state constitutions, provided the following conditions are met:
"1. The defendant must have been represented by counsel at the earlier hearing; 2. The witness testified under oath; 3. The witness was cross-examined, or else there was a valid waiver of the right to cross-examination; 4. At the time of the trial, the witness (whether out-ofstate or not) is unavailable or unable to testify; and 5. The state has made a good-faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate." (citations omitted)
Thus, we must determine whether all relevant factors set forth in Kaufman, supra, are satisfied here.
Jeanfreau's testimony merely echoes that given prior to its introduction at the present trial by Patterson and Moraga, except that it adds yet another positive lineup and in-court identification based on an adequate opportunity to view the perpetrator. The cross-examination conducted at the earlier trial merely sought to establish whether others were present in the store with Jeanfreau besides the group of friends and whether West had spoken to Jeanfreau during commission of the offense. It was not extensive cross-examination.
Sturgis' testimony related his acquaintance with West, his meeting with West and a companion on the afternoon of the offense and the request of West's companion that they be driven to the grocery (where the witness Mayville was employed) to buy band-aids. Sturgis told how he purchased the band-aids at the request of West's companion, testified that West and *517 the companion had cuts, and stated that West ". . . put one [band-aid] on." Sturgis then related that he drove West and his confederate to a location within a block of Jeanfreau's where, ostensibly, the unnamed passenger was to visit someone's house. West and the other man left Sturgis' truck and Sturgis awaited their return, as requested. Sturgis claimed that West returned to the truck, followed by his companion. Sturgis testified that he heard shots before the two returned and stated that West's friend approached "running hard", entered the truck and told him (Sturgis) to pull up. According to Sturgis, they effected a quick departure and later parted company. Sturgis disclaimed any involvement in the crime which took place at Jeanfreau's and opined that West likewise was not involved. Sturgis related West's report that he and his friend entered the store, unaware of the incident, and soon people began shooting at them. Asked if West shot back in self-defense, Sturgis gave a negative answer, stating West had no gun. Sturgis opined that West's companion had a gun, and admitted that West was in the other man's company, but persisted in stating his belief that West was unaware of what was transpiring.
On cross-examination of Sturgis at the earlier trial defense counsel sought to explore the nature and extent of Sturgis's involvement. Counsel for defense established that Sturgis had initially been charged with the same offense for which West was being prosecuted and elicited an admission that Sturgis was released after giving a statement substantially in accord with his testimony. On re-cross, defense determined Sturgis' lack of knowledge of the events within Jeanfreau's store.
While it must be conceded that counsel at the first trial failed to conduct cross-examination aimed at discrediting Jeanfreau's identification of West (the only portion of the Jeanfreau testimony with arguably more than cumulative effect) the mere forbearance from inquiry with such a design does not, in our view, establish inadequate cross-examination. The record does not establish how many state's witnesses had preceded Jeanfreau at the earlier trial, but the pagination of the transcript of Jeanfreau's testimony indicates that substantial prior testimony was presented. The experience of defense counsel in the second trial reveals what often happens when an identification is attacked on cross-examination the witness becomes more positive and adamant and his identification is established as unassailable. We cannot say, in view of the exceedingly narrow scope of direct examination of Jeanfreau (revealing merely cumulative mattereven his own positive line-up and in-court identification were really cumulative) and the potential for bolstering identification inherent in all attacks thereon, that the sketchy cross-examination of Jeanfreau and the failure to probe the identification evidence were inadequate cross-examination.
Nor can we pronounce the earlier trial cross-examination of Sturgis ineffective. A review of the cross-examination of Sturgis clearly exhibits that the defense actually inquired into the areas which counsel at the present trial maintained had not been explored at the first trialthe arrest of Sturgis and his possible involvement in the offense being prosecuted.
Contrary to the defense claims at this second trial and in brief on this appeal, the federal courts did not decree that cross-examination at the earlier trial was inadequate. The federal court determination was one of general ineffectiveness due to lack of preparation and it was conceded by the federal district court that ". . . defense lawyer's improvisations [may indeed have been] ingenious."
We here determine that the purposes of confrontation were not so thwarted, nor the right of confrontation so significantly undermined, as to warrant a reversal of this conviction and sentence based on the introduction of this testimony from a prior trial. In reaching our decision, we are no doubt influenced somewhat by the overwhelming strength of the State's case (apart from the *518 testimony of Jeanfreau and Sturgis).[1] But this factor alone would not justify a denial of relief if the rights of confrontation and cross-examination had been materially impaired. Testing the testimony of Jeanfreau and Sturgis against the conditions outlined in Kaufman, supra, we determine that all conditions set forth therein have been met. The purposes underlying the guarantee of confrontation, as set forth in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) were enunciated in Kaufman:
"`Confrontation: (1) insures that the witness will give his statements under oaththus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.' (Italics ours)"
We find that the purposes of confrontation were achieved in the earlier trial; establishment of the factors conditioning admission set forth in Kaufman were properly determined to have been met here.
Under the circumstances present here, the trial court did not err in allowing into evidence the prior trial testimony of the deceased witnesses Jeanfreau and Sturgis.

Decree
For the aforestated reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that in this second trial defense failed, both in cross-examination and in presentation of its case, to undermine in any way the content of the testimony given upon the first trial by Jeanfreau and Sturgis, notwithstanding ample opportunity to discover any evidence which would have neutralized or nullified its effect. At best, adequately prepared counsel presented a questionable alibi defense which was rejected by the jury.