HALL, Judge.
This suit arises out of an intersectional collision between a Ford Station Wagon, owned and driven by Marc Anthony, and a Renault automobile, owned by Jack Ely and driven by his wife, Mrs. Shirley E. Ely. No one was injured in the accident except plaintiff’s seven-year-old daughter, Kimm Warrington, a guest passenger in the Ely automobile, who suffered a Y inch through- and-through cut on her upper lip. The cut was sutured at the emergency room of the Southern Baptist Hospital by Dr. Leo J. Vallette. An infection in the wound developed three days later which resulted in a ¡4 inch separation between the lip segments at the bottom of the cut. This defect was to a great extent corrected six months later by Dr. Neal Owens, a plastic surgeon.
Mr. Warrington, individually and on behalf of his minor daughter, brought suit against Hardware Mutual Casualty Company, Mr. Ely’s insurer; Mr. Anthony and his insurer, Employers’ Liability Assurance Corporation, Ltd.; Southern Baptist Hospital; and Dr. Vallette in solido for $206,-000.00 damages for the injury received by Kimm in the accident, and for the subsequent suturing and plastic surgery and the consequential damages. Dr. Vallette answered denying liability. Each of the remaining defendants answered and filed *209 third-party demands for either contribution or indemnity against all other defendants.
The case was tried before a jury which returned a general verdict by a vote of ten to two accompanied by answers to interrogatories under the provisions of LSA-C.C.P. art. 1812. In answer to the interrogatories submitted to it, the jury found that the sole and proximate cause of the accident was negligence on the part of Marc Anthony, and exonerated all other defendants. The general verdict was in favor of plaintiff and against Marc Anthony and his insurer in solido in the sum of $1,600-00; for plaintiff individually for medical expenses and in the sum of $8,000.00 for the use and benefit of his minor daughter, Kimm. The Trial Judge entered judgment in accordance with the jury’s verdict. An application for a new trial and alternatively for a remittitur filed by Mr. Anthony and his insurer, Employers’ Liability Assurance Corporation, Ltd., was denied and they appealed. Plaintiff answered the appeal praying that the award for Kimm’s injuries be increased from $8,000.00 to $20,000.00 and that in all other respects the judgment be affirmed.
The first question presented is by whose fault the collision occurred? The jury found that negligence on the part of Marc Anthony was the sole proximate cause of the accident and the record fully sustains the jury’s finding in this respect.
The accident happened at about 9:45 A. M. on June 17, 1963 at the intersection of Freret and State Streets in the City of New Orleans. Freret is a 30 mile per hour through street running in an uptown-downtown direction and State is a 20 mile per hour street which runs in a river-lake direction and is controlled by a stop sign at its intersection with Freret Street. Both are undivided two-way streets. It had been raining hard just prior to the accident and a light drizzle or mist was falling at the time of the accident. The streets were wet. A large milk truck was parked on the lake side of Freret Street facing in a downtown direction with its rear end right at the down-town lake corner of the intersection.
Mrs. Ely was driving a small Renault automobile in an uptown direction on Fre-ret Street, after having stopped for a red light on Nashville Avenue one block downtown from State Street. She was proceeding slowly at between 15 and 20 miles per hour on account of the wet street.
Mr. Anthony, who had been proceeding on State Street towards the river, brought his station wagon to a stop in obedience to the stop sign at the intersection. Being unable to see down Freret Street on account of the milk truck Mr. Anthony proceeded slowly forward into the intersection. He testified that he first saw the Ely car when he was near the center of the intersection and that at that time the Ely car was about 50 feet away opposite the front bumper of the milk truck which was parked headed downtown; that the Ely car seemed to be travelling 35 miles per hour and appeared to be braking; that the Ely car could not turn to the right on account of the milk truck and could not turn left into the downtown traffic lane. Instead of accelerating to cross the center line of Freret Street which he first thought he could do, Mr. Anthony stopped his car right at the center line and the collision occurred. The Ely car struck his station wagon at the left front door. The collision was a relatively minor one; the two cars remained stationary within inches of each other; no glass was broken; and no one was injured except plaintiff’s young daughter, Kimm. Mr. Anthony further testified that it was his impression that the moment Mrs. Ely saw him she jammed on her brakes and skidded into his car.
Mrs. Ely testified that she was proceeding uptown on Freret Street at between 15 and 20 miles per hour; that she first saw the Anthony station wagon when she was opposite the motor of the improperly parked milk truck; that her first thought was that he was going to go on across and start *210 ed to “tap” her brake but at the same instant, realizing he had stopped, she slammed on her brakes and skidded into him.
The only difference in the two versions of the accident is the speed of the Ely car. The record leaves no doubt in our minds that the Ely car was travelling at a speed of less than 20 miles per hour.
Appellants contend that the jury was improperly charged as to the duties and responsibilities of the drivers of the two vehicles. In our opinion the Judge’s charges to the jury were complete and proper in this respect and the jury’s finding that the accident was proximately caused by negligence on the part of Mr. Anthony and that Mrs. Ely was free from fault is the only finding that we as judges of the facts as well as the law could sustain. It was not sufficient that Mr. Anthony stopped at the stop sign. He was charged with the further duty of not entering the intersection without ascertaining that he could cross in safety. If in fact he might have crossed in safety he was negligent in stopping in the path of the Ely vehicle. Mrs. Ely travelling on a through street and having knowledge of the stop sign on State Street was not negligent in proceeding past the parked truck at a reasonable speed, and immediately upon seeing the Anthony vehicle she did all she could to avoid the accident.
The jury found no negligence on the part of Dr. Leo J. Vallette who was charged with malpractice in failing to properly suture Kimm’s lip and found no negligence on the part of Southern Baptist Hospital which plaintiff charged with furnishing improper medications and materials in connection with the suturing. We are of the opinion that these findings are correct. The record does not contain any proof which would sustain a finding of negligence on the part of either the doctor or the hospital.
Appellants contend that the damages awarded by the jury are excessive. Plaintiff contends on the other hand that they are inadequate.
The cut on her upper lip which plaintiff’s daughter, Kimm, received in the accident was a smashing type through-and-through laceration. It extended from the vermillion or red portion upwards from the lip line from which she bled profusely. Dr. Vallette cleansed, debrided and sutured the wound. He explained that the wound exhibited a wide area of tissue damage and was not a clean type wound such as a knife cut. During the suturing Kimm was extremely excited and had to be physically restrained. Three days after the accident the wound became infected. It opened at the bottom, turned red in color and was puffy with some material coming out of it. Dr. Vallette saw her on June 21 and June 29, 1963 but nothing could be done until the infection subsided. The wound healed with a Va" gap between the vertical segments of the lip line.
Kimm was referred to Dr. Peter Salatich for a dental examination and evaluation which was negative. She was next referred to Dr. C. R. Smith, a psychiatrist, who saw her five times between November 11, 1963 and April 13, 1964, and again on January 24, 1967. When he first saw her he found her shy and nervous with a tendency to bite her lips and to hide them with her fingers. He found her overly protected and introverted but basically healthy emotionally-
Plastic surgery was performed on Kimm’s lip by Dr. Neal Owens in January 1964. When Dr. Smith saw her in April 1964 following the plastic repair he found her lip definitely improved and found no evidence of severe permanent disorder, anxiety or depression. Dr. Smith testified that on his last examination in January 1967 Kimm was not particularly worried about her lip and stated to him that she didn’t think about it any more.
As previously stated Dr. Neal Owens performed plastic surgery on Kimm’s lip in January 1964. Dr. Owens’ deposition was taken but he was reported out of the city on the date of the trial and did not testify. *211 Plaintiff offered Dr. Owens’ deposition in evidence but the Trial Judge sustained an objection to the offer stating that he did so “because the deposition was not taken in accordance with the articles providing for the taking of depositions to perpetuate the testimony of the doctor.” The Trial Judge went on to say: “The Court feels that under Article 1428, especially paragraph 3E, it does not have the right to permit the particular deposition to the jury, in view of the opposition and objection of the counsel for all of the defendants.”
The facts relating to Dr. Owens’ deposition are as follows: On January 20, 1967 plaintiff gave written notice to all defense counsel of record that the deposition of Dr. Owens would be taken on January 30, 1967. Plaintiff also caused a subpoena to be issued to Dr. Owens for his appearance in Court on Monday, February 13, 1967, the date fixed for the trial. The subpoena was received by the sheriff on February 6, 1967 and served on Dr. Owens at his office on Thursday, February 9, 1967 through his secretary, Mrs. A. Levy. On Friday, February 10, 1967 Mrs. Levy telephoned counsel for plaintiff and informed him that Dr. Owens was absent from the city and would also be absent on the date of the trial.
Counsel for Southern Baptist Hospital and counsel for Dr. Vallette did not attend the taking of the deposition on J anuary 30th although they duly received notice thereof.
Plaintiff contends that the deposition should have been admitted in evidence under the provisions of LSA-C.C.P. Art. 1428(3) (b) which permits the deposition of a witness to be used if the Court finds that the witness is out of the state or is at a greater distance than one hundred miles from the place of trial and LSA-C.C.P. Art. 1428(3) (d) which permits a deposition to be used if the Court finds “that the party offering the deposition has been unable to procure the attendance of the witness by subpoena.”
The record contains no proof that Dr. Owens was either outside of the state or that he was at a greater distance than one hundred miles from the place of the trial, and we are of the opinion that plaintiff’s effort to subpoena Dr. Owens was too late and falls short of constituting satisfactory proof that he was “unable” to procure Dr. Owens’ attendance at the trial, especially since the subpoena directed to Dr. Owens’ office address and served on his secretary was unenforceable because the service thereof was neither personal nor domiciliary.
While we are of the opinion, in view of these circumstances, that the deposition was properly excluded, we nevertheless have read the deposition (proffered by plaintiff under the provisions of LSA-C.C.P. Art. 1636) and find nothing therein which would alter our opinion of the case either as to liability or quantum.
Appellants contend that the Trial Court erred in permitting hearsay testimony as to the recommendations of Dr. Owens and the possible need for further surgery. Plaintiff and his wife were each asked whether or not Dr. Owens recommended a second operation. Each answered in the affirmative before any objection was made. Following their answers objections were made that the testimony was hearsay. The Trial Judge ruled that the questions had already been answered and all that he could do was to tell the jury to disregard the testimony which he declined to do on the ground that the question whether or not Dr. Owens recommended a second operation was a question of fact within the knowledge of the witnesses and did not call for hearsay testimony. We are of the opinion that the ruling was correct.
Appellants further contend that the Trial Judge erred in permitting numerous photographs to be introduced in evidence depicting Kimm at three stages, namely before the accident, shortly after the accident when the scarring and disfigurement had set in and finally after the surgical revi *212 sion. We find no error in the Judge’s ruling on these photographs.
Both the testimony and the photographs show that Kimm’s lip has been greatly improved by the plastic surgery performed by Dr. Owens in January 1964. However there is still some visible scarring and a slight protrusion or lump at one point in the upper lip line.
Although Kimm’s parents testified that Dr. Owens had recommended a second plastic operation, the second operation was never performed, Kimm’s parents expressing themselves as not being willing, at least up to the time of the trial in February 1967, to make Kimm go through a second operation especially since there was no assurance that the lip would be further improved.
The jury awarded $1,600.00 to Mr. War-rington for the medical expenses and other special damages. The record reveals however that the medical expenses and other special damages amounted to only $913.90. Apparently the jury included in its award an amount for a second operation. Since it is highly problematical and speculative whether a second operation will ever be performed the award to Mr. Warrington will be reduced to $913.90.
The jury awarded Kimm damages in the sum of $2,000.00 for pain and suffering up to the time the infection set in and an additional $6,000.00 for the disfigurement and subsequent treatment of the lip. As pointed out bjr the Trial Judge in his written reasons for denying a new trial this division of the damages by the jury resulted from the necessity of propounding interrogatories to the jury to determine the amount of damages to be assessed against Dr. Vallette and Southern Baptist Hospital should they be held liable. However the jury made it plain that Kimm should receive $8,000.00 over all for her pain, suffering and disfigurement.
While we consider the jury’s award to be rather generous, when we consider that Kimm is a young girl and that in all probability the scarring and the slight protrusion on the upper lip line will be permanent, we are unable to say that the jury’s award of $8,000.00 was an abuse of the “much discretion” vested in it.
For the foregoing reasons the judgment appealed from is amended by reducing the amount of damages awarded Gilbert O. Warrington individually from $1,600.00 to the sum of $913.90 and as so amended and in all other respects the judgment is affirmed ; costs of this appeal to be borne in equal proportions by appellants and appellees.
Amended and affirmed.