SANDERS, Justice.
 

 In this criminal prosecution for murder, the jury returned a verdict of guilty without capital punishment against the defendant, Charles F. Nelson. The trial judge then sentenced him to life imprisonment. He has appealed to this Court, relying upon eleven bills of exceptions. These bills relate primarily to the overruling of his motion to suppress evidence, the use at the trial of the testimony of a prosecution witness taken at the preliminary hearing, and the admission in evidence of a shirt and other demonstrative evidence.
 

 The theory of the State’s case is that Nelson, while robbing William Powell on August 23, 1968, beat him severely and left him unconscious on the Mississippi River levee. One week later, allegedly as a result of his injuries, Powell died at a Baton Rouge hospital.
 

 About two days after the robbery, law enforcement officers arrested Charles F. Nelson for carrying a concealed weapon. He-' also became a suspect in a car theft. While' investigating the car theft, the police officers made observations that seemed to implicate Nelson in the battery-robbery. Aft-er further investigation, the officers arrested him for the crime. Upon death of the victim, the defendant was charged with murder.
 

 BILL OF EXCEPTIONS NOS. 1, 2, 3, and 10:
 
 Overruling of Motion to Suppress.
 

 Defendant reserved Bill of Exceptions No. 1 to the overruling of his motion to suppress two photographs of the defendant, shown to the victim by the investigating officers and identified by him. Defendant argues that the action of the officers in showing the photographs to the victim was unduly suggestive and inherently unfair. The trial judge overruled the motion to suppress the photographs on the ground that the officers had previously shown the victim photographs of other persons, and under all of the circumstances, the identification procedure was fair.
 

 At the trial, the State did not introduce the photographs or any evidence of the
 
 *160
 
 photographic identification. Hence, the motion to suppress the photographs as evidence at the trial is now moot. See LSA-C.Cr.P. Art. 703; State v. Lawrence, 260 La. 169, 255 So.2d 729 (1971).
 

 Bills of Exceptions Nos. 2, 3, and 10 were reserved to the overruling of the motion to suppress all of the physical objects that the investigating officers took from defendant’s residence. These included a bloody shirt, allegedly worn by the defendant at the time of the homicide, and certain items, allegedly belonging to the victim. The trial court found that the defendant’s wife consented to the search of the residence.
 

 The defendant attacks the ruling on two grounds:
 

 (1) The wife had moved from the residence and could give no valid consent, and
 

 (2) She consented only because she thought the officers had a search warrant.
 

 Defendant relies upon the decision of the United States Supreme Court in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), holding that a person’s acquiescence in a search by officers who assert they have a search warrant does not constitute “consent” to the search, waiving Fourth Amendment rights.
 

 On Sunday, August 25, 1968, Nelson was arrested for carrying a concealed weapon. After his arrest, the Baton Rouge City Police launched an investigation of his involvement in an automobile theft. As part of the investigation, the officers secured a search warrant for the Nelson residence, to search for certain items connected with the auto theft. They exhibited this warrant to Mr-s. Nelson before making the search. Several items connected with the auto theft were seized.
 

 During the course of the above search, Sgt. Delaughter of the City Police observed what appeared to be a bloody shirt and blood on the floor. He was also informed by defendant’s wife that an elderly man called “Uncle Bill” had been at the residence with defendant. Although unaware of the robbery-battery at the time, Sgt. Delaughter reported these observations to the Sheriff’s office. That office then began an investigation of defendant’s involvement in the Powell case.
 

 Sgt. O’Conner of the Sheriff’s office and Delaughter contacted Mrs. Nelson at her father’s residence. The officers made m> representation that they held a search warrant. She readily agreed to a search in connection with the robbery-battery, accompanied the law enforcement officers to the residence, and cooperated in the search. She appeared at the hearing on the motion to> suppress and confirmed her consent to the search.
 

 Although Mrs. Nelson knew of the earlier auto-theft search warrant, the record re-
 
 *162
 
 fleets that she was not induced to give her consent by this warrant or by any representation of the officers that they held a search warrant. She testified explicitly, “I would have given them permission anyway.” Under these circumstances, Bumper v. North Carolina, supra, is inapplicable. The evidence is clear and convincing that her consent was given voluntarily. See State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), and the authorities therein cited.
 

 The record reflects that, at the time of his arrest for carrying a concealed weapon, defendant and his wife were living in a rented house on Victory Drive in Baton Rouge. Shortly after the arrest, Mrs. Nelson began staying at the home of her parents “until things got settled.” The police contacted her there for consent to search the house. Shortly after the search, she removed her furniture to her parents’ home. Under these circumstances, the record is insufficient to establish that she relinquished her control of the rented house. She had authority over the house at the time of the search, and her consent to the search is valid. See State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Gregoire, 249 La. 890, 192 So.2d 114 (1966); United States v. Thompson (5 Cir.) 421 F.2d 373 (1970).
 

 These bills of exceptions are without merit.
 

 BILL OF EXCEPTIONS NOS. 4 and 5 r
 
 Evidence of Theft of Automobile.
 

 The trial court overruled defendant’s objection to the testimony of the law enforcement officers concerning defendant’s theft of an automobile from Mrs. Ernestine A. Barcelona. The testimony tended to show that, after the present crime was committed, defendant stole the automobile and, at the time of his arrest, it was parked at his residence with the license plate removed and with a packed suitcase in it.
 

 Although evidence of other crimes is generally inadmissible, an exception is made when the evidence has an independent relevance to a proper issue in the case.
 

 It is well established that flight may properly be considered by the jury in determining guilt. It tends to show consciousness of guilt and becomes one of the circumstances from which guilt may be inferred. A wide range of evidence is admissible to prove flight. State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Neal, 231 La. 1048, 93 So.2d 554 (1957); 30 Am.Jur.2d, Evidence, § 1128, p. 299. Although the evidence of flight may disclose another crime, it is nonetheless admissible. See State v. Neal, supra; 29 Am.Jur.2d, Evidence, § 285, pp. 332-333.
 

 In the present case, the theft of the automobile and the placing of a packed suit
 
 *164
 
 case in it were admissible to show a planned flight.
 

 The bills of exceptions lack merit.
 

 BILL OF EXCEPTIONS NO. 6:
 
 Admission of Testimony Taken at Preliminary Hearing.
 

 After making a showing that Dorothy Recotilli could not be found, the State was allowed to introduce her testimony taken at the preliminary hearing.
 

 Under Bill of Exceptions No. 6, the defendant contends that the showing made was insufficient to permit the use of her testimony at the preliminary hearing.
 

 Article 295 of the Louisiana Code of Criminal Procedure provides:
 

 “The transcript of the testimony of a defendant who testified at the preliminary examination is admissible against him upon the trial of the case or, if relevant, in any subsequent judicial proceeding.
 

 “The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or
 
 cannot be found,
 
 and that the absence of the witness was not procured by the party offering the testimony.” . . . (Italics added.)
 

 The evidence shows that Joseph W. Salard, a commissioned investigator of the East Baton Rouge Parish District Attorney’s office, received a subpoena for Dorothy Recotilli on Friday afternoon. He attempted to locate her on Sunday and Monday. He checked her last known address given on the police report and a telephone number she had previously furnished.
 

 Although the record is not completely clear, it also appears that he checked the utilities and credit bureau records. He was unable to locate the witness. The State offered in evidence the return on the subpoena (State Exhibit 21, Tr. 252). Although this exhibit is omitted from the record,
 
 [1]
 
 we must assume consistently with the officer’s testimony that the return showed that after diligent search the witness could not be found.
 

 Doris Brock, who had known the absent witness for two years, was called to testify as to her whereabouts. She was unable to supply any information that would be helpful in locating her.
 

 The trial judge ruled that the showing was sufficient to permit the introduction of the witness’ testimony taken at the preliminary hearing. (The district attorney agreed that if he was able to locate the witness during the remainder of the trial she would be produced.)
 

 
 *166
 
 The trial judge’s ruling as to the sufficiency of the foundation for the admission of the testimony is entitled to considerable weight. We find no adequate reason to reverse his ruling.
 

 BILL OF EXCEPTIONS NO. 11:
 
 Admission of Victim’s Clothing.
 

 As a foundation for the admission of a shirt, a hat, and sandals, allegedly belonging to the victim, the State produced the testimony of Sgt. George O’Conner as follows:
 

 “Q. When did you first start investigating this case?
 

 "A. We were dispatched by the Sheriff’s office August 24, 1968, approximately 10:15 a. m. to the Lady of the Lake Hospital.
 

 “Q. And what did you find there, sir?
 

 “A.
 
 I talked to the victim . . .
 

 “Q. Who is he?
 

 “A. William Powell.
 

 "Q. Did you know him personally?
 

 “A.
 
 No, sir, I didn’t.
 

 “Q. All right.
 

 “A. I talked to the victim. He was
 

 “Q. What was his general condition? Explain how he looked?
 

 “A. When we arrived at the hospital, he was in the emergency room. Of course, he was lying on a table. He had numerous bruises about him . . .”
 

 “Q. Did you obtain any physical evidence from the hospital?
 

 “A.
 
 Yes, sir, I obtained the victim’s shirt, a pair of sandals, and a hat, also a .
 

 “Q. Well, just a minute, I want to show you State Exhibit 18 and ask you if you can identify this exhibit, sir ?
 

 “A. Yes, sir, this is the shirt that I removed from the hospital.
 

 “Q. And that was from what hospital?
 

 “A. Lady of the Lake Hospital emergency room.
 

 “Q. I want to show you State Exhibit 6 and ask you if you can identify this?
 

 “A.
 
 Yes, sir, these are the sandals that I removed, slippers, from the hospital, from the victim.
 

 “Q. All right, did you remove anything else from that hospital on that occasion?
 

 “A.
 
 Yes, sir, I removed a hat that he had been wearing.
 

 “Q. State Exhibit 5, I ask you if you can identify that, please?
 

 “A.
 
 Yes, sir, this is the hat.
 

 “Q. This is what you referred to, the hat?
 

 
 *168
 
 “A. Yes, sir.”
 

 “Q. Sgt. O’Conner, you say you went to the hospital, pursuant to a call, and saw Mr. Powell?
 

 “A.
 
 Yes, sir.
 

 “Q. When you got there, was he dressed ?
 

 “A. No, sir, he was lying on the table with a robe that the hospital places on you.
 

 “Q. Did you see any clothes there?
 

 “A. Yes, sir, they were up underneath the table he was lying on, the stretcher.
 

 “Q.
 
 What did you see ?
 

 “A.
 
 There was a shirt, a coat, pants, shoes.”
 

 Mrs. Nelson, defendant’s wife, identified Exhibits 5 and 6 as the hat and shoes worn by the victim when he accompanied her husband to the Nelson residence prior to the time of the crime. (Tr. 114).
 

 The defendant contends that the foundation was inadequate to connect the clothing with the victim; hence, the clothing was inadmissible. The State asserts that the foundation was adequate, but in any event, the admission of the clothing could not have been prejudicial.
 

 Before the admission of demonstrative evidence at a trial, such evidence must be identified. The testimony can be visual, that is, by testimony at the trial that the object displayed is the one related to the case. For admission, it suffices if the evidence establishes that it is more probable than not that the object is connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402 (1969); State v. Martin, 250 La. 705, 198 So.2d 897 (1967); State v. Bertrand, 247 La. 232, 170 So.2d 386 (1965).
 

 The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. State v. Dillon, 260 La. 215, 255 So.2d 745 (1971); State v. Wright, 254 La. 521, 225 So.2d 201 (1969); State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969); State v. Progue, 243 La. 337, 144 So.2d 352 (1962); 2 Wharton’s Criminal Evidence (12th ed.), § 673, p. 617.
 

 As to Exhibits 5 (the hat) and 6 (the shoes or sandals), the foundation approaches positive identification. Exhibit 18 (the shirt) was with these items at the hospital emergency room occupied by the victim. Although the foundation falls short of positive identification as to the shirt, we conclude the foundation is adequate for admission purposes. The objection goes to the weight of the evidence.
 

 We find no error in the ruling of the trial judge.
 

 
 *170
 
 BILL OF EXCEPTIONS NO. 12:
 
 State’s Closing Argument.
 

 The defendant reserved this bill to the following statements in the State’s closing argument:
 

 “We have him coming into a state of immediate and unexplained — other than that he robbed the old man — prosperity, from a few dollars to several hundred dollars . . .”
 

 “The law says that a person who is in the unexplained possession of property recently stolen in a robbery is presumed to have committed the robbery. The law goes further, and consistent along with those two presumptions, and it is this. A party who is found in the unexplained possession . . .”
 

 The defense contends that this argument represents a comment upon the defendant’s failure to testify.
 

 This question has been decided adversely to the defendant in State v. Braxton, 257 La. 183, 241 So.2d 763 (1970); State v. White, 247 La. 19, 169 So.2d 894 (1964); and State v. Pace, 183 La. 838, 165 So. 6 (1935).
 

 In his brief, the defendant concedes that these decisions are in point. He contends, however, that Article 770 of the Louisiana Code of Criminal Procedure has repudiated these decisions. Our study of the article discloses no change in the law announced in the decisions.
 

 Hence, the bill of exceptions lacks merit.
 

 BILL OF EXCEPTIONS NO. 13:
 
 Refttsal to Give Special Charges.
 

 The defendant reserved Bill of Exceptions No. 13 to the trial judge’s denial of the defense request for special charges.
 

 All of the rejected charges relate to the felony-murder doctrine.
 

 Article 807 of the Louisiana Criminal Code provides:
 

 “The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
 

 “A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.”
 

 In instructing the jury on the felony-murder doctrine, the trial judge stated:
 

 “Section 30 is the murder article. ‘Murder is the killing of a human being, one,
 
 *172
 
 when the offender has a specific intent to kill or to inflict great bodily harm, or two, when the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.’ ”
 

 “Section 67 defines theft 'Theft is the misappropriation or taking of anything of value which belongs to another either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practice or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.’ Article 64 defines armed robbery, and the reason I read you the theft article is because Section 64 says, ‘Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another by use of force or intimidation while armed with a deadly weapon — a dangerous weapon. The definition of dangerous weapon is in Section 2, Sub-section 3, which says a dangerous weapon includes any gas, liquid or other substance or instrumentality which in the manner used is calculated or likely to produce death or great bodily harm.’ The second, Section 65, defines simple robbery. ‘Simple robbery is the theft of anything of value from the person of another or which is in the immediate control of another by use of force or intimidation, but not armed with a dangerous weapon.’ ”
 

 The trial judge ruled as follows upon defendant’s request for special charges:
 

 “The defense has requested several special charges. The Court denies Special Charge Number One, as covered in the general charge, denies Number Two as not an accurate statement of the law of this State, denies Number Three as not an accurate statement of the law of this State, denies Number Four, as the general charge covered the point involved, denies Number Five for the same' reason as stated for Number Four, denies Number Six as not an accurate statement of the law of Louisiana, denies Number Seven as not applicable to the present case.”
 

 We have reviewed the requested charges and find no error in the trial court’s ruling.
 

 BILL OF EXCEPTIONS NO. 14:
 
 Denial of Motion for a New Trial.
 

 In his motion for new trial, the defendant reurged the previous bills of exceptions. The final bill of exceptions was reserved to the overruling of the motion. Hence, this bill presents nothing new for review.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . The State has reported that the exhibit cannot be found in the trial court.