305 So.2d 532 (1974)
STATE of Louisiana, Appellee,
v.
Napoleon MOORE, Appellant.
No. 54431.
Supreme Court of Louisiana.
December 2, 1974.
Dissenting Opinion January 17, 1975.
Rehearing Denied January 17, 1975.
Murphy W. Bell, Director, Woodson T. Callihan, Jr., Trial Atty., Baton Rouge, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant is charged with aggravated rape. La.R.S. 14:42. A prior conviction for this offense was reversed because irrelevant and prejudicial testimony as to a *533 different rape[1] had been introduced. 278 So.2d 781, 784 (1973). On the retrial, the defendant was once again convicted and sentenced to life imprisonment. Because constitutionally inadmissible testimony was introduced by the prosecutor on the retrial, we must once again reverse and remand for a new trial.
The reversible error occurred in connection with the admission into evidence and the reading to the jury of the previously recorded testimony of one Kanwalject Kaur Gill, a crucial state witness. This testimony had been taken at the previous trial, and it included cross-examination before that trial jury.
As a predicate for the introduction of this deposition testimony, the state relied on the testimony of previous witnesses that Mrs. Gill was now in Chicago, Illinois, working at Northwestern University in Illinois, as well as upon a recently issued sheriff's return showing that the deputy who attempted to serve it was "Unable to Locate". The state made no effort to show that it had attempted to secure the attendance of Mrs. Gill at the present trial, nor that it was unable to do so, nor unable to locate Mrs. Gill in Illinois.
The defendant objected to the introduction of this deposition testimony, pointing out that the state had made no showing of any effort to locate and obtain the live testimony of this witness at this trial. The state argued that, since the defendant had had the opportunity to cross-examine the witness at the previous trial, it was sufficient to show that the witness was out of state in order to excuse the prosecution from producing the live witness for confrontation before the present trial jury.
The defense responded to the trial court that, to admit such deposition evidence, upon simple showing that the witness was out of state, was to defy the ruling in State v. Sam, 283 So.2d 81 (La.1973) and the federal and supreme court decisions cited and relied upon by that case. The defense pointed also that the state could secure the attendance of the witness by means of a subpoena issued as authorized by interstate statutes.
The assistant district attorney persuaded the trial court that State v. Sam did not apply, upon his interpretation of this then unreported decision. This prosecutor pointed out his familiarity with the decision, noting that he had handled that prosecution also.
The assistant district attorney was clearly mistaken in his interpretation of State v. Sam. In that case, a conviction was reversed because deposition testimony of a witness was permitted to be introduced. The testimony was taken at a preliminary examination, where it was subject to cross examination.
In reversing in State v. Sam, we held, 283 So.2d 85: "There is no showing that the witness has been diligently sought without avail or that the prosecution has made a good-faith effort to secure the witness' presence at the trial, in the absence of which showing the defendant's constitutional and statutory rights to have the live-witness testify before the trial jury were violated by the introduction of the deposition testimony." (Italics added.)
Our decision relied upon and extensively quoted from the United States Supreme Court decision in Barber v. Page, 390 U.S. 710, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). This decision described as fundamental the right of an accused in a state trial to have the live testimony of a witness before the trial jury for the trial jury's evaluation of a witness' credibility (except in limited circumstances where a cross-examined witness *534 is truly unavailable for the trial despite good-faith prosecution efforts to obtain his presence there).
In the cited decision, the United States Supreme Court specifically pointed out that the prosecution is not excused from securing the attendance of an out-of-state witness. This 1968 decision of our nation's highest court specifically pointed out that "the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings provides a means by which prosecuting authorities from one State can obtain an order from a court in the State where the witness is found directing the witness to appear in court in the first State to testify . . . As of 1967 the Uniform Act was in force in 45 States, the District of Columbia, the Canal Zone, Puerto Rico, and the Virgin Islands. See 9 Uniform Laws Ann. 50 (1967 Supp.)." 390 U.S. 723, 88 S.Ct. 1321.
The referred-to uniform act was adopted in Illinois in 1959, see 38 Ill.Ann.Stat. Sections 156-1 through 156-6. It was adopted in Louisiana by Act 285 of 1936, was first placed in the Louisiana Revised Statutes at 15:152.1 through 152.5 (1950), and is now found in the Louisiana Code of Criminal Procedure as Articles 741 through 745 (1966).[2] Thus, as the defendant's counsel urged to the trial court, a means was available to compel the presence of this Illinois witness at this Louisiana trial.[3]
In Barber v. Page, the nation's high court unanimously stated, as plainly as the English language permits, that in circumstances such as the present a state conviction must be reversed where deposition testimony is introduced instead of the live witness: The constitutional right of confrontation is so importantnot only to permit cross-examination, but also to permit the trial jury to judge the witness' credibility face to facethat the prosecution cannot introduce the deposition testimony even of a cross-examined witness (as here and as in State v. Sam), unless the state has first made a good-faith and diligent effort to obtain the presence at the trial of the out-of-state witness, including by use of the uniform act for such purpose (adopted by Illinois and Louisiana and almost all states).
In State v. Sam, we attempted to explain, as clearly as we could, the holding in Barber v. Page and its application to Louisiana criminal trials. Summarizing the holding and the essential reasons for this holding, we quoted extensively from that decision of the United States Supreme Court and we do so once again:
In speaking of the right of confrontation guaranteed to the accused in state trials by the Sixth and Fourteenth Amendments to the federal constitution, the United States Supreme Court stated in Barber v. Page, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968): "Many years ago this Court stated that `[t]he primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or ex parte affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demanor *535 upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). More recently, in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, `There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' Pointer v. State of Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed. 923 (1965). See also Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)." (Italics ours.)
In oral argument before this court, the assistant district attorney who prosecuted the present case stated that he could not obtain the presence of the out-of-state witness because Illinois was not among the states which had enacted the uniform act.[4] This claim is not made by the state in its supplemental brief, which the court had requested to be filed with regard to such contention.
This supplemental brief now concedes the applicability of Barber v. Page, but now argues that the error was harmless because (1) the absent witness was in fact cross-examined by the defendant's previous counsel at the prior trial and (2) the prosecutrix, not the absent witness, was the principal witness against the defendant at the second trial. We can find no support in Barber v. Page, the federal supreme court jurisprudence upon which it relies, nor State v. Sam for such limitation upon the square holdings that constitutional confrontation rights bar the deposition testimony of any absent witness, whether out of state or not, even if the defendant has cross-examined in previous proceedings. (Nevertheless, if cross-examined, such testimony may be admissible in exceptional circumstances of true unavailability of the witness not here shown.)
The supplemental argument implies, at least, the error is harmless because, even if the deposition testimony of the absent witness had not been introduced, the testimony of other witnesses for the state was sufficient to support a conviction. However, in strenuously arguing to the trial court for the admission of the deposition testimony of this witness over defense objection, the prosecutor frankly stated: "She is critical. She's a very damaging witness." Tr. 91.[5]
We cannot hold the error to be harmless. In the first place, the denial of the important right of confrontation is "a substantial violation of a constitutional or statutory right", which cannot be considered harmless error. La.C.Cr.P. art. 921, so providing; State v. Sam, 283 So.2d 81 (La.1973). See also State v. Michelli, 301 So.2d 577 (La. 1974).
In the second place, the state's strong case against the defendant is balanced by the strong case to the contrary of the defendant. See Comment, 33 La.L.Rev. 82 (1972). He himself took the stand and denied his guilt, and he produced unusually strong and corroborating alibi testimony of his other eleven witnesses that he was elsewhere that afternoon. Upon this defense is based the defendant's argument that the identification of him by the prosecutrix and Mrs. Gill as the suspect must be mistaken and must have been of another black youth who resembled him. The absent *536 witness' testimony was very damaging to this defense. See Footnote 5.
We would usurp the function of a trial jury if, on the basis of this closely divided evidence, we ourselves determined guilt or innocence and concluded, upon such basis, that the constitutionally inadmissible testimony did or did not contribute to the conviction.
The conviction must therefore be reversed because infected with prejudicial and constitutionally inadmissible testimony.
Our responsibility to the judicial function and to the constitution we are sworn to uphold invites us once again to outline our constitutional duty with regard to this appeal and, however unpleasant it is for us to do so, to note that the cause for the present reversal does not lie with the reviewing court in the performance of such duty.
In the first place, a jury verdict based on improperly prejudicial inadmissible testimony (first verdict) or infected with unconstitutionally admitted evidence (second verdict) does not prove guilt. Under our time-honored principles of judicial review, it is the province of the jury, not of an appellate court, to determine guilt or innocence on the basis of properly admitted evidence. A court cannot deny a criminally accused his constitutional rights because it and the prosecutor determine that the accused is guilty of the crime of whichbefore his guilt is determined by a jury on the basis of constitutionally received evidencehe is merely accused. An accused eventually convicted properly is as much entitled to the protection of the constitutional guarantees of a fair trial as is one eventually acquitted.
In the second place, the right of confrontation of which the present accused has been deprived is guaranteed to him by the federal constitution. If we overlook this denial in this state review, the federal courts will simply set aside the conviction and order a new trial as in the case of State v. Holmes, 258 La. 221, 245 So.2d 707 (1971), certiorari denied, Holmes v. Louisiana, 406 U.S. 909, 92 S.Ct. 1612, 31 L.Ed.2d 820 (1972), where a new trial was ordered in Civil Action 72-178 on July 23, 1972 by the United States District Court, Middle District of Louisiana, on the basis of the denial to accused of his constitutional right of confrontation of a witness against him in the state court prosecution. As in State v. Sam, 283 So.2d 81 (La. 1973), where we reversed a conviction based in part on deposition evidence introduced in defiance of the federal constitution confrontation rights, it is the duty of this court as well as of the federal courts to enforce the federal constitution.
Further, we do not save the state the expense of the eventual re-trial which will be ordered by the federal courts. We simply delay it, at the cost of further staleness of the evidence and of further diversion of the time of judges, court personnel, prosecutors, and defense counsel in the cumulative post-conviction proceedings which result if we ignore the plain denial of constitutional right evidenced by the present prosecution.
We are aware of and regret the additional expense to which the parish will be put by a new trial and, even more, the additional anguish which will be caused the victim of someone's rape, whether or not the accused's, in once again being forced to take the stand and recount the incident. Nevertheless, we cannot let such factors deter us from our sworn constitutional duty to permit the defendant a fair trial, at which only constitutionally permissible testimony is received; of which, until now, he has been deprived by repeated trial error.
For the reasons assigned, therefore, we reverse the conviction and sentence, and we remand this case for a new trial in accordance with law.
Reversed and remanded.
CALOGERO, J., assigns additional concurring reasons.
MARCUS and SUMMERS, JJ., dissent and assign reasons.
*537 SANDERS, C. J., dissents for the reasons assigned by MARCUS, J.
CALOGERO, Justice (concurring).
I join in the majority's reversal of this defendant's conviction because of a clear violation of his right of confrontation guaranteed by the 6th and 14th Amendments to the United States Constitution. Every person accused of crime in this country is entitled, except in very limited circumstances not here prevalent, to be confronted by the State's witnesses.
The prosecutor in this case presented the transcription of a key witness' testimony at an earlier proceeding without having made a good faith effort to procure the attendance of that witness. This error, committed by the State and permitted by the trial judge, can hardly be deemed harmless, State v. Sam, 283 So.2d 81 (1973), particularly where, as here, the important transcribed testimony of the witness, placing the defendant at the scene of the crime at the time of the crime, was obviously relied upon by the trial jury in their discounting the testimony of eleven defense witnesses whose testimony established, or tended to establish, an alibi for the defendant.
We are mandated to reverse a trial court conviction where there has been a substantial violation of a constitutional or statutory right. La.C.Cr.P. Art. 921. This type of appellate review precludes this Court's determining guilt or innocence. The underlying purpose, however, of review to determine whether there has been a substantial violation of a Constitutional or statutory right, and the underlying purpose of Constitutional and statutory provisions of substance and procedure, are to assure a fair trial, and enhance the likelihood of conviction of the guilty and acquittal of the innocent. A trial court conviction based in part upon reversible trial error is no conviction at all. Nor do two successive convictions, each plagued by reversible error, amount to a valid one.
If Napoleon Moore is guilty of the September 18, 1971 rape with which he is charged, it is incumbent upon the State to procure a conviction in a fair and proper trial. It is of no moment under the law that he may be a bad man. Furthermore, it is irrelevant to the defendant's guilt or innocence in this case that he is serving a life sentence, upon conviction, upheld by this Court, for a rape committed on September 14, 1971. State v. Moore, 300 So. 2d 492 (1974).
MARCUS, Justice (dissenting).
The prosecutrix or victim in this case was the principle witness against Moore; she had seen him on five or six occasions over several months prior to the date of this rape; she had ample time and opportunity to view him at the time of the rape; she identified him shortly after the rape. Additionally, she made a positive identification of him at the time of trial. The absent witness simply stated she saw defendant twice on the afternoon of the rape, at 3:00 p. m. and 4:00 p. m., in the building in which the rape occurred. The prosecutrix was raped at about 3:30 p. m. The weight of the absent witness' testimony loses its significance in view of the strong evidence by the prosecutrix identifying the accused as her assailant under the circumstances of this case. Thus, even assuming error in admitting the transcript of the absent witness' testimony taken at the prior trial, I do not consider that the conviction should be reversed. The error was harmless. Article 921, La.Code Crim.P. Accordingly, I respectfully dissent.
SUMMERS, Justice (dissenting).
The missing witness had been thoroughly and fully cross-examined, and the missing witness here was not the principal witness. The transcript offered into evidence plainly supports this conclusion. Thus, the principal basis of the majority opinion is not supported by the record. In my view there was no lack of confrontation, and the conviction and sentence for the second time in this case should be affirmed.
NOTES
[1] Since this original opinion, the conviction of the defendant for this other rape has been affirmed, for which the defendant has been sentenced to life imprisonment. State v. Moore, 300 So.2d 492 (La.1974).
[2] The fact that Illinois enacted the statute in 1959 is found not only in the annotations to the uniform laws which the United States Supreme Court referred to in 1968 in Barber v. Page, see text above, but also is contained in a table of the enacting states which is set forth preceding Article 741 of West's LSA-Code of Criminal Procedure (1967), commonly found in the library of attorneys of this state.
[3] Of course, if despite diligent and good-faith effort the state was unable to locate the witness in Illinois, her testimony taken under cross-examination at the previous trial would have been admissible under the limited exception to the confrontation rule permitted where the defendant is truly unavailable. See Barber v. Page at 390 U.S. 725-726, 88 S.Ct. 1322. See also State v. Nelson, 261 La. 153, 259 So.2d 46 (1972).
[4] In view of the easy accessibility of information to the contrary by the slightest research on the issue, see Footnote 2, this misstatement by a conscientious and careful attorney is not easily understandable.
[5] The prosecutrix was raped at about 3:30 PM. The testimony of the out-of-state witness was extremely damaging, because she stated she saw him twice on the afternoon of the rape, at 3:00 P.M and at 4:00 PM, in the building in which the rape occurred. The defendant relied upon eleven witnesses attempting to establish his whereabouts elsewhere at the time of the rape. The absent witness supplied the only testimony other than the prosecutrix' that the accused was near the scene at the time of the rape.