325 So.2d 235 (1975)
STATE of Louisiana, Appellee,
v.
Wilbert JONES, Appellant.
No. 56748.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied January 16, 1976.
Concurring Opinion January 27, 1976.
*236 Vincent Wilkins, Director, Roland T. Huson, III, App. Counsel, Baton Rouge, for appellant.
*237 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, James E. Boren, Asst. Dist. Attys., for appellee.
TATE, Justice.
The defendant was convicted of aggravated rape, La.R.S. 14:42, and sentenced to life imprisonment at hard labor. His conviction on a first trial was reversed because of trial error. 283 So.2d 373 (La.1973).
On his present appeal, the two principal errors urged relate to (a) the identification procedures by which the victim identified the accused as her rapist and (b) the use of deposition testimony of a medical witness, allegedly unavailable.
Identification Testimony
The victim was raped on October 2, 1971. The accused, then aged 19, was arrested at his home at about midnight on January 13, 1972, some three and one-half months later.
In the interval, the victim had been shown on several occasions photographs of suspects who matched her description. In the single instance where she had made a tentative photographic identification, she had at a physical lineup found that the person was not her rapist.
The defendant was arrested for investigation over three months later because a rapist confessing other crimes had implicated by name the present defendant. No objection was made during the trial at the time this testimony of the reason for the arrest was educed, partly by cross-examination on behalf of the defendant.
When the defendant was brought to the police headquarters, he was informed of his rights to have a lawyer and not to participate in a line-up. The evidence shows he voluntarily consented to the line-up, picked four inmates of parish jail to participate in it with him, and also picked his own number and placement in the lineup. All members of the line-up were dressed similarly, in jail clothes. We further do not find error in the trial court's factual finding that there were no suggestive differences in the participants of this line-up which might have influenced the victim's identification.
The victim viewed the line-up. The participants in the line-up each repeated certain phrases suggested by the victim, which had been used by her rapist at the time of the offense.
The victim (who herself was black) identified the present defendant as her rapist from among the five young blacks participating in the line-up. Her identification was mainly on the basis of similar facial features, although she noted that the accused was a little shorter than she had remembered her rapist being and that he spoke a little rougher (although his pronunciation of a certain phrase was identical to her memory of her rapist's).
At the trial before the jury, she repeated these reservations, but stated she was 98% certain that the accused was her rapist. Her testimony also shows that she had ridden with him for about an hour, frequently in lighted areas, had been raped twice by him, and had had adequate opportunity to observe and remember him.
We find no merit to the defendant's assignments that the line-up identification sheet was admitted without proper identification (Assignment of Error No. 1), that the line-up procedure was improper because suggestive and conducted without counsel (the latter had been intelligently waived) and that the in-court identification should therefore be suppressed because tainted (Assignments 2, 5, 8, 9), or that the identification should be suppressed because it was the product of an unlawful arrest (Assignment 10).
As to the last contention (Assignment 10), the evidence indicates that the *238 accused was arrested as the potential rapist on the basis of information given an investigating officer by another person, who confessed to being the accused's partner in other rape attempts. Assuming that such information without more investigation did not constitute probable cause to arrest the accused even for the limited purpose of securing his attendance with his consent at a line-up, we find that the circumstances of the voluntary appearance before the lineup subsequent to the detention sufficiently show an act of free will sufficient to purge any primary taint of illegality. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975).
Use of Deposition Testimony
A serious assignment of error is posed by the contention that the recorded testimony of a medical witness was read to the jury, instead of the state's producing the live-testimony of this witness before the present trial jury (Assignment No. 15).
The confrontation clauses in our federal and state constitutions prohibit the introduction by the prosecution of transcribed testimony from a former proceeding (even where cross-examination rights were then available), unless the state proves the witness is truly not available for the trial despite good-faith and diligent efforts to locate him timely before the trial and to produce him at the trial.
See: United States Constitution, Sixth Amendment; Louisiana Constitution of 1974, Art. 1, Section 17; Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); State v. Moore, 305 So.2d 532 (La.1975); State v. Kaufman, 304 So.2d 300 (La.1974); State v. Sam, 283 So.2d 81 (La.1973). See also: Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).
The multiple purposes served by the confrontation requirements of the state and federal constitutions are summarized as follows in California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970): "Confrontation: (1) insures that the witness will give his statements under oaththus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the `greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." (Italics ours).
Our decision in State v. Sam, 283 So.2d 81 (La.1973) relied upon and extensively quoted from the United States Supreme Court decision in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). This decision described as fundamental the right of an accused in a state trial to have the live testimony of a witness before the trial jury for the trial jury's evaluation of a witness' credibility (except in limited circumstances where a cross-examined witness is truly unavailable for the trial despite diligent good-faith prosecution efforts to obtain his presence there).
In Barber v. Page, the nation's high court unanimously stated, as plainly as the English language permits, that in circumstances similar to the present a state conviction should be set aside where transcribed testimony is produced instead of the live witness: The constitutional right of confrontation is so importantnot only to permit cross-examination, but also to permit the trial jury to judge the witness' credibility face to facethat the prosecution cannot introduce the transcribed testimony even of a cross-examined witness (as here and as in State v. Sam), unless the State has first made a good-faith and diligent effort to obtain the presence at the trial of the out-of-state witness (including by use of a uniform act for such purpose, adopted by Louisiana and almost all states.)
*239 In State v. Sam, we attempted to explain, as clearly as we could, the holding in Barber v. Page and its application to Louisiana criminal trials. Summarizing the holding and the essential reasons for this holding, we quoted extensively from that decision of the United States Supreme Court, and we do so once again:
"In speaking of the right of confrontation guaranteed to the accused in state trials by the Sixth and Fourteenth Amendments to the federal constitution, the United States Supreme Court stated in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968): `Many years ago this Court stated that "[t]he primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or ex parte affidavits * * * being used against the prisoner in lieu of a personal examination and crossexamination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). More recently in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Pointer v. State of Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). See also Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).'" (Italics ours.)
In the present instance, the state claims that the deputy coroner who examined the victim was unavailable for the trial despite diligent and good-faith efforts to produce him.
These efforts were: "Domiciliary service" upon the medical witness, a deputy coroner,[1] some twelve days before the trial, by leaving a copy with his receptionist at the doctor's private office; a telephone call by the prosecutor's secretary on the first day of the three-day trial, at which the secretary informed the unidentified recipient of the call that the doctor was to be on standby basis to be called as a witness in the trial going on; and a telephone call on the afternoon of the second day of the trial by the prosecutor's investigator, at which he was informed that the doctor had been "out of town" (at some unidentified location) for a week and would not be back until the following Monday.
The evidence of the almost-perfunctory attempts to assure the attendance of the deputy coroner, a state official, to testify for the prosecution, is plainly not the "full and convincing" proof of unavailability of a witness and of timely good-faith and diligent efforts to secure his attendance required before his transcribed testimony may be introduced in lieu of his live attendance. State v. Johnson, 261 La. 620, 260 So.2d 645, 650-51 (1972). See also State v. Augustine, 252 La. 983, 215 So.2d 634 (1968). Much more intensive location and production efforts are required to be timely made, before the constitutional requirement *240 is deemed satisfied that will permit the jury to receive deposition testimony instead of hearing a live witness. Cf., State v. Nelson, 261 La. 153, 259 So.2d 46, 50 (1972).
The prosecutor may not agree with the confrontation requirements as enunciated by the United States Supreme Court and by this court.[2] Despite such reservations on his part (or, for that matter, on our part), we are bound by the confrontation requirements of our constitutions, a fundamental decision of our people in favor of trial by live witnesses before a jury, in preference to trial by affidavit and depositions and the ancient abuses that resulted from such governmental shortcuts.
Nevertheless, under the peculiar circumstances here present, we are unwilling to hold that this error is cause for reversal. La.C.Cr.P. art. 921
The one page of testimony by the deputy coroner concerned a brief summary of his physical examination of the victim after the rape. It was a factual and non-inflammatory recital of the undramatic indicia of some bruising, corroborating a forcible rape.
If the forcible rape had been at issue, we could not say that the evidence, however brief and unimpassioned, was harmless as not being prejudicial to the substantial rights of the accused or as a substantial violation of a constitutional right. La.C.Cr.P. art. 921; State v. Moore, 305 So.2d 532 (La.1974). Here, however, as the defendant's able counsel frankly admitted in closing argument, the defense did not contend that no forcible rape had occurred. Tr. 505-06. (The defense was that the state had not borne its burden of proving that the accused was the rapist or properly identified as the person who had committed the rape.)
As always, in circumstances such as the present, the reviewing court is faced with the dilemma that, by seeming to excuse a constitutional shortcut as "harmless" under limited circumstances, it will apparently approve such shortcuts for future use. We have attempted, as plainly as we can, to state once again that the use of deposition instead of live testimony is constitutionally disfavored and that it is permitted only in extremely limited circumstances, not here present.
We hope that future reversals will not be required to enforce this constitutional command, and that our characterization of this error as non-reversible under the very limited circumstances here shown should not be taken as a warrant for its use, lending to court reversal in the future by ignoring the constitutional requirement of confrontation of live witnesses before a trial jury required in criminal trials.
Other Assignments of Error
Of the other assignments of error, the most serious is presented by Assignment No. 18.
This assignment pertains to improper closing argument by the assistant district attorney: Pointing out the proven respectability and reliability of the victim, the prosecutor urged that `she should not be condemned as a perjuror" by acquitting the defendant. The defendant's objection to this argument was overruled.
*241 The argument was improper as injecting an issue broader than and irrelevant to the issue of the defendant's guilt or innocence. See American Bar Association Standards Relating to the Prosecution Function, Standard 5.8(d). We do not find it reversible chiefly because, in subsequent closing argument, the defendant fully explained to the jury that an acquittal did not impugn the integrity or truthfulness of the obviously fair and honest complaining witness, who had fully admitted areas of uncertainty in her identification, but who might nevertheless be mistaken in her identification.
This type of argument should not recur, however. It improperly injects the prosecutor's unnecessarily prejudicial, irrelevant, and inadmissible opinion as to an issue not concerning the guilt or innocence of the accused. Cf. 5 Wharton's Criminal Law and Procedure, Section 2034, p. 345 (Anderson ed., 1957).
The other assignments of error are not briefed and are presumed abandoned: Assignments 3, 4 (motions to quash the grand jury and petit jury venires); Assignments 6, 7 (questions objected to as subjective or leading); Assignments 11, 12 (testimony relating to a comb and its admission objected to on ground of lack of connexity); Assignments 16, 20 (motions for directed verdict and for new trial denied); and Assignment 17 (objection to state's brief rebuttal testimony as to the defendant's height).
Our examination of the record discloses no merit to these bills.

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
MARCUS, J., concurs.
SANDERS, C.J., concurs in the result only.
SUMMERS, J., concurs in the result only, and assigns reasons.
DIXON, J., dissents.
SUMMERS, Justice (concurring).
In addition to the conflicting and inconsistent statements contained in the opinion relative to the confrontation clause, I cannot agree that the opinion fulfills the Court's obligation to assign reasons for its decisions. A number of assignments of error are disposed of by a cursory mention of the issues involved and a bare declaration that the assignments are without merit. Therefore, I concur in the result only. Fortunately, however, the opinion cannot serve as precedent, for it has not received a majority vote, except for the result.
NOTES
[1] La.C.Cr.P. art. 735, subd. A provides that "domiciliary service" shall be made by leaving the subpoena "at the dwelling house or usual abode" of the person served. Prior to enactment of La.C.Civ.P. art. 1236 by Act 778 of 1975, a year after the present trial, valid service could not be made upon a physician through personal service upon a clerical employee of the physician at his office. See Warrington v. Employers Group Insurance Companies, 207 So.2d 207 (La.App.4th Cir. 1968), certiorari denied 252 La. 118, 209 So.2d 42 (1968).
[2] We note that the present trial prosecutor was the same assistant district attorney whose refusal to follow confrontation requirements resulted in this court's reversals in Moore, Kaufman, and Sam, cited above, and resulted in the federal court's setting aside the conviction in State v. Holmes, 258 La. 221, 245 So.2d 707 (1971), see Civil Action 72-178, United States District Court, Middle District of Louisiana, under circumstances strongly reminiscent of the present.